*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| In the Matter of the Necessity for the Hospitalization of | ) ) ) | Supreme Court No. S-16665 |
| DANIELLE B. | ) ) | Superior Court No. 3AN-17-00414 PR |
| | ) ) ) ) ) ) | O P I N I O N <br><br> No. 7420 – November 29, 2019 |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Erin B. Marston, Judge.

Appearances: Callie Patton Kim, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for Danielle B. Laura Fox, Assistant Attorney General, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for State of Alaska.

Before: Bolger, Chief Justice, Winfree, Stowers, Maassen, and Carney, Justices.

CARNEY, Justice.

## I. INTRODUCTION

A woman who suffers from schizoaffective disorder was involuntarily committed for 30 days. She appeals, arguing that the State failed to prove that there were no less restrictive alternatives than commitment. Because the court did not err by finding clear and convincing evidence that there was no less restrictive alternative, we affirm the court's order committing her for involuntary treatment.

## II. FACTS AND PROCEEDINGS

Danielle B.[1] is a 73-year-old woman who suffers from schizoaffective disorder, a chronic psychiatric illness involving psychotic symptoms and periods of mania or depression. Her illness has led to repeated hospitalizations and temporary improvements with the help of medication. But upon release she has deteriorated after stopping the medication. As a result she has had housing problems and incidents involving police due to her behavior, leading to more hospitalization. Since the 1980s she has been admitted to Alaska Psychiatric Institute (API) 30 times.

Danielle's most recent admission followed an incident in February 2017. She became upset after being evicted from the motel where she was living and assaulted a police officer who had been called to the scene. The officer took her into emergency custody and delivered her to Providence Alaska Medical Center.

An emergency room counselor interviewed Danielle shortly after she arrived. The counselor's notes described Danielle as "extremely aggressive and hostile, . . . disorganized in her speech and appear[ing] delusional." Danielle attempted to assault hospital staff and had to be restrained. She refused to take medication. Because the counselor considered Danielle "likely to cause harm to others at this time and gravely disabled," he filed a petition to authorize hospitalizing Danielle for evaluation.[2]

The court granted the petition for evaluation the following day, finding that Danielle was diagnosed with schizoaffective disorder, had previous admissions to API, was currently aggressive and hostile, had assaulted a police officer and attempted to do the same to hospital staff, was disorganized in her speech and appeared delusional, and

---

[1]    A pseudonym has been used to protect Danielle's privacy.

[2]    AS 47.30.710.

presented as likely to cause harm to others and gravely disabled. Danielle was transferred to API the next morning.

API medical staff later petitioned for a 30-day involuntary commitment order for Danielle.[3] At the commitment hearing the State's expert witness, an API psychiatrist, testified that Danielle had assaulted a staff member that morning. The psychiatrist testified that no one was hurt, but Danielle was "so loud and intrusive . . . and nobody was able to [] console her or verbally redirect her, that she entered a crisis period and received involuntary medications."

The psychiatrist testified that he was familiar with Danielle from a number of previous admissions to API and that he was "familiar with her diagnosis, . . . patterns of behavior, and response to medication." He did not think Danielle was a good candidate for a homeless shelter because "she'd be easily provoked, easily stressed, and then would be at risk for possibl[e] victimization." He also testified that he was not sure whether she would eat if she were released.

When asked if there were any less restrictive alternatives than commitment to API to treat Danielle's illness, the doctor responded that he did not "see her being involved in outpatient treatment at this point," noting that he did not believe that she had any place to live, and that he did not think she would be safe. He explained further that although she had at times attempted outpatient treatment, his review of her records led him to believe that "she's [n]ever bought in to followup with a . . . clinic or any kind of outpatient treatment" after any of her previous discharges from API.

Danielle testified after the psychiatrist. She acknowledged her mental illness but protested that she "can't diagnose myself" when asked if she knew what her

---

[3]    On the same day API also filed a petition for involuntary medication, but it was withdrawn the next day after Danielle agreed to take medication. AS 47.30.730.

diagnosis was. She also conceded that medication had helped her "[s]omewhat" in the past but that she "really need[ed] talk therapy" and could not find the right clinic. She testified that she had seen a doctor at Anchorage Community Mental Health Services for "many years," but that the services there were "completely inadequate." She said she would look for a different agency if "they ha[d] some kind of a mental facility." Danielle also testified that she had a place to stay with her foster mother.

In its oral findings the standing master found that the State had proved by clear and convincing evidence that Danielle had a longstanding mental illness and that without medication she was likely to cause harm to others, noting her aggressive encounters, including the assault of a police officer and API staff, to support its finding. The standing master also found Danielle to be gravely disabled and unable to secure safe housing. The standing master additionally found that Danielle had refused voluntary treatment at API and that there was no less restrictive alternative to API where she would participate in outpatient treatment if released.

The superior court agreed with the standing master and issued its written order of commitment on February 22. It found by clear and convincing evidence that Danielle was mentally ill, likely to cause harm to herself or others, and gravely disabled. It found by clear and convincing evidence that there was no less restrictive alternative to API that would adequately protect Danielle and the public. The court noted that "[h]er behavior puts her at risk for harming others and for being a victim" — citing her assault of the police officer, her lack of housing, and her current confusion. The court also noted that Danielle had testified that "she would try to find alternative help elsewhere" but "[a]t this time there is no less restrictive place."

Danielle appeals her involuntary commitment at API, arguing that the State did not prove that there was no less restrictive alternative for her.

## III.   STANDARD OF REVIEW

" 'Factual findings in involuntary commitment or medication proceedings are reviewed for clear error,' and we reverse those findings only if we have a 'definite and firm conviction that a mistake has been made.' "[4] We grant "especially great deference" when the "findings require weighing the credibility of witnesses and conflicting oral testimony."[5] "[W]hether factual findings comport with the requirements of AS 47.30," is a question of law that we review de novo.[6] "[W]e will review de novo the superior court's decisions and use our independent judgment to determine whether, based on underlying factual findings made by the superior court, there was clear and convincing evidence that involuntary [commitment] was in [respondent's] best interests and was the least intrusive available treatment."[7]

## IV.   DISCUSSION

Danielle argues that the State did not prove by clear and convincing evidence that hospitalization at API was the least restrictive option. She argues that the court erred by not requiring the State to prove that community-based care and services

---

**4**    *In re Hospitalization of Jacob S.*, 384 P.3d 758, 763-64 (Alaska 2016) (quoting *Wetherhorn v. Alaska Psychiatric Inst.*, 156 P.3d 371, 375 (Alaska 2007), *overruled on other grounds by In re Hospitalization of Naomi B.*, 435 P.3d 918 (Alaska 2019)).

**5**    *In re Hospitalization of Tracy C.*, 249 P.3d 1085, 1089 (Alaska 2011) (quoting *Bigley v. Alaska Psychiatric Inst.*, 208 P.3d 168, 178 (Alaska 2009)).

**6**    *Wetherhorn*, 156 P.3d at 375.

**7**    *In re Hospitalization of Lucy G.*, 448 P.3d 868, 878 (Alaska 2019) (citing *Myers v. Alaska Psychiatric Inst.*, 138 P.3d 238, 250 (Alaska 2006); *see also id.* at 19 n.53 ("[I]n the final analysis the answer must take the form of a legal judgment that hinges not on medical expertise but on constitutional principles aimed at protecting individual choice." (quoting *Myers*, 138 P.3d at 250)).

were inadequate to protect both Danielle and the public.

An involuntary commitment petition will be granted only if there are no less restrictive alternatives available to treat the individual's illness.[8] The petitioner, in this case the State, must prove by clear and convincing evidence that no such alternatives exist.[9] A "least restrictive alternative" is "no more harsh, hazardous, or intrusive than necessary to achieve the treatment objectives of the patient" and does not restrict an individual except as reasonably necessary to provide treatment and protect the patient and others from physical injury.[10] Commitment is authorized "only if no feasible less restrictive alternative treatment is available."[11]

The evidence presented during Danielle's commitment hearing demonstrated that she had assaulted or attempted to assault a police officer and the staff at two different hospitals, with one assault occurring the morning of the hearing. The court noted that Danielle's "presentation during the hearing support[ed] the doctor's testimony" because she was "actively symptomatic, presenting with paranoia, derailed thoughts, auditory hallucinations and aggression/provocation." The evidence also demonstrated that even within API's controlled environment she had to be involuntarily medicated to keep herself and others safe.

The API psychiatrist testified that Danielle would not participate in outpatient treatment and was likely to cause harm to herself and others if released. He testified that Danielle was not currently able to participate in or benefit from any

---

[8] *In re Hospitalization of Connor J.*, 440 P.3d 159, 165 (Alaska 2019); *In re Hospitalization of Mark V.*, 375 P.3d 51, 58 (Alaska 2016); *see* AS 47.30.730(a)(2).

[9] *In re Connor J.*, 440 P.3d at 165 (quoting *In re Mark V.*, 375 P.3d at 58).

[10] AS 47.30.915(11).

[11] *In re Hospitalization of Naomi B.*, 435 P.3d 918, 932 (Alaska 2019).

treatment outside the hospital and that additional restrictions — crisis medications — were needed even while she was hospitalized. He also testified that she had never previously "bought into" outpatient treatment while a patient at API. And he expressed concern that her confusion put her at risk of hypothermia, while her aggressiveness made it likely that she would either victimize others or, as a woman in her 70s, become a victim herself.[12]

Danielle herself testified that she would not participate in outpatient treatment at the provider both parties acknowledged was a potential alternative. She testified that she wanted to obtain outpatient treatment but was not willing to return to the only outpatient provider known to be available, and where she had been treated — with inconsistent results — for "many years." She also conceded that she did not have an alternative provider or a plan to seek treatment at any specific place.

The superior court was required to "consider whether a less restrictive alternative would provide adequate treatment" for Danielle.[13] The standing master's oral findings make clear that she considered the testimony from both witnesses about the availability and feasibility of alternatives to commitment before concluding that no less restrictive alternative would adequately protect both Danielle and the public while providing her with the treatment she needed.

The superior court agreed with the standing master's findings in its written order. After concluding that no less restrictive facility would adequately protect Danielle or the public, the superior court ordered Danielle committed for up to 30 days. Because

---

[12] *See In re Mark V.*, 375 P.3d at 60 (affirming 30-day commitment because "mental illness and resulting behavior currently impair his judgment and reasoning to the point where he would be entirely unable to fend for himself independently in the community").

[13] *In re Hospitalization of Jacob S.*, 384 P.3d 758, 768 (Alaska 2016).

the evidence provided by both witnesses demonstrated that commitment was necessary for "the protection of [Danielle and] others from physical injury,"[14] and that outpatient treatment was not feasible, the superior court did not err in finding that no less restrictive placement alternatives were available.

## V.  CONCLUSION

Because, upon de novo review, we agree with the superior court's conclusion that no less restrictive alternative was available, we AFFIRM the superior court's involuntary commitment order on its merits.

---

[14]     *See* AS 47.30.915(11)(B).