NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| ROSE D., | ) | |
| | ) | Supreme Court No. S-17569 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-15-00824 CN |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| STATE OF ALASKA, DEPARTMENT | ) | AND JUDGMENT* |
| OF HEALTH & SOCIAL SERVICES, | ) | |
| OFFICE OF CHILDREN'S SERVICES, | ) | |
| | ) | |
| Appellee. | ) | No. 1776 – July 8, 2020 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Andrew Peterson, Judge.

Appearances: Megan R. Webb, Assistant Public Defender, and Samantha Cherot, Public Defender, Anchorage, for Appellant. Anna Jay, Assistant Attorney General, Anchorage, and Kevin G. Clarkson, Attorney General, Juneau, for Appellee.

Before: Bolger, Chief Justice, Winfree, Maassen, and Carney, Justices. [Stowers, Justice, not participating.]

## I.     INTRODUCTION

A mother who relinquished her parental rights to a child retained the right to request a hearing if the Office of Children's Services (OCS) denied the grandmother's request to have the child placed with her. After the grandmother's request was denied,

---

\*      Entered under Alaska Appellate Rule 214.

the mother requested a hearing. The superior court concluded that OCS had presented clear and convincing evidence that its denial of placement with the grandmother was justified. The mother appeals.

We conclude that the superior court's factual findings are not clearly erroneous and that it did not abuse its discretion by finding good cause to deviate from the statutory requirement that the child be placed with an adult family member. We further conclude that although its order contained factual inaccuracies, the inaccuracies are harmless errors because the court did not rely on them in making its decision.

## II. FACTS AND PROCEEDINGS

### A. Facts

Adric[1] is Rose's fifth child.[2] OCS took emergency custody of Adric soon after his birth in December 2015 and placed him in a foster home. An OCS caseworker later testified that Rose had admitted to using methamphetamine while pregnant, and that Adric had tested positive for opiates after he was born. OCS's emergency petition alleged that Adric was in need of aid due to parental incarceration,[3] neglect,[4] substance

---

[1]      We use pseudonyms to protect the family's privacy.

[2]      Rose's parental rights to her four other children were terminated.

[3]      Alaska Statute 47.10.011 lists 12 bases for finding a child in need of aid, including the incarceration of a parent, if the other parent is not available or able to care for the child, and if the incarcerated parent has not made adequate arrangements for the child's care. *See* AS 47.10.011(2).

[4]      *See* AS 47.10.011(9) (child subjected to neglect by conduct or conditions created by parent).

abuse,[5] and mental illness.[6] Rose stipulated to Adric's adjudication as a child in need of aid under AS 47.10.011(10) (substance abuse) and to OCS's temporary custody.

In September 2016 Rose's mother, Donna, requested that OCS place Adric with her. OCS is required by statute to place children with an "adult family member"[7] unless there is clear and convincing evidence of good cause not to do so.[8] OCS denied Donna's request in October based on concerns about Donna's "past child protection issues." Donna requested a superior court hearing to review OCS's decision.[9] But before the hearing was held she withdrew her request based on information she received from OCS that Adric suffered from significant medical problems.

OCS later determined that Adric's foster parent had lied when she claimed he had cystic fibrosis and required oxygen monitoring and a feeding tube. In May 2018 Donna again requested that the agency place Adric with her. OCS denied this second

---

[5]    *See* AS 47.10.011(10) (parent's ability to parent substantially impaired by addictive or habitual use of intoxicant, and has resulted in substantial risk of harm to child).

[6]    *See* AS 47.10.011(11) (parent has mental illness, serious emotional disturbance, or mental deficiency that places child at substantial risk of physical harm or mental injury).

[7]    AS 47.10.990(1)(A) (defining "adult family member" to include grandparent).

[8]    AS 47.14.100(e) ("The department shall place the child, in the absence of clear and convincing evidence of good cause to the contrary . . . with . . . an adult family member."), (m) (listing examples of "prima facie evidence of good cause").

[9]    *See* AS 47.14.100(m) ("If the department denies a request for placement with an adult family member . . . the department shall inform the adult family member . . . of the basis for the denial and the right to request a hearing to review the decision.").

request because Donna's husband, Jack, had been convicted of a domestic violence assault against Donna; an OCS regulation barred placement of any child in the same home as Jack for five years.[10] Donna requested a superior court hearing to review OCS's denial of her request.

### B.    Proceedings

#### 1.    First review hearing

The superior court convened a hearing in July. OCS presented testimony from four police officers and the assigned OCS caseworker. The police officers testified about a number of calls to Donna's home between 2011 and 2015 for incidents involving domestic violence, including one in January 2015 that led to Jack's arrest for misdemeanor assault against Donna. He was later convicted of this charge.

The caseworker testified that OCS did not believe that Adric could safely be placed with Donna. She noted OCS's concerns about Donna's history of child protection issues and the history of domestic violence between Donna and Jack. The caseworker testified that according to OCS regulations Jack's 2016 conviction for domestic violence created a five-year barrier to placing a child in his home unless a variance were granted. She also stated that Donna's remaining with Jack caused her concern because placing a child in a home with domestic violence is "damaging to [a child's] well-being and their development."

The caseworker also testified that she had concerns apart from the domestic violence between Donna and Jack. One of her concerns was possible communication issues between Adric, who did not know sign language, and Donna, who is deaf.[11] The

---

[10]    *See* 7 AAC 10.905(d)(1)(A).

[11]    The caseworker later clarified that this was not her primary concern, nor one that would prevent placement with Donna.

caseworker also believed that Donna did not "ha[ve] a good foundation of what it's like to parent given her substance abuse history when she was parenting her own children and the issues she had surrounding that." The caseworker additionally questioned whether Jack would really move out of Donna's house until the five-year barrier period expired. Finally, she testified she was concerned that Donna would not set appropriate boundaries with Rose or prevent her from being around Adric if Rose was "not in a place of being safe, i.e. . . . having issues with substance abuse . . . or mental health issues."

Donna testified after the caseworker. She first objected to her request being denied due to the caseworker's concern about her deafness. She explained why it was important to her to teach Adric sign language and to connect him with deaf and hearing-impaired people in the community. When she was asked whether she understood that Jack's domestic violence was a barrier to Adric being placed with her, she responded that she did. But she questioned why it mattered because Jack's arrest and conviction had happened "prior to [Adric] even being born," was not "related to the children," and "there ha[d] been no violence involving [Adric]."

She testified that Jack had not been violent when he was arrested—"he just threw the toast at me." She asserted that there had been no violence in her home since then. Donna stated that she would immediately call the police and tell Jack to leave if he became violent in the future.

After hearing the evidence the court made a preliminary finding that as long as Jack was in Donna's home, OCS had presented clear and convincing evidence of good cause to deviate from the requirement to place Adric with a family member. The court noted that even if Jack no longer lived with Donna, he would still have "the kind of contact with the child that would cause the [c]ourt concern for the child's safety." The court did not consider whether Donna was potentially barred for life from having a child placed with her based upon her history with OCS because it did not have sufficient

information. The court also found that OCS had not informed Donna that she could seek a variance from the regulations that would allow Adric to be placed with her. It continued the hearing for three months to allow Donna to apply for a variance.

The variance was denied in late January 2019. Another review hearing was scheduled for May. In early February Donna filed a new request for Adric to be placed with her, and stated that Jack had moved out of her home. A second caseworker met with Donna in March. Donna gave the caseworker a copy of Jack's one-way plane ticket to Michigan. She told the caseworker that Jack was going to begin substance abuse treatment there, but she was unable to provide any information about the treatment facility. The caseworker noted that Jack's belongings were still in Donna's home, but that Donna said she planned to mail them to him. The caseworker also noted that Jack's name was still on the lease, and that Donna was not considering divorce.

OCS denied Donna's February placement request in April. OCS based the denial on her history of relationships featuring domestic violence and child protection issues, as well as concerns that she would be unable to protect Adric from Jack were Jack to return home. Donna again sought judicial review of OCS's decision; the review hearing was scheduled for May in place of the previously continued hearing.

### 2. Second review hearing

The review hearing was held over two days in May and June. The OCS supervisor of the assigned caseworkers testified about Donna's placement requests and the reasons they were denied. The supervisor referred to a 1999 report alleging that then-13-year-old Rose was pregnant for the third time, that Rose was smoking marijuana and not attending school regularly, and that Donna was not providing food for her. The supervisor testified that about a year later, OCS received a report that Rose was having a sexual relationship with a 19-year-old man who lived with her and Donna, and that Rose was drinking, smoking marijuana, and smoking cigarettes with a six-month old

baby present. The reports were admitted into evidence "for the purposes of showing that there was an allegation filed," and "showing what conduct OCS took going forward[,] but not for the truth of the matter asserted."

The OCS supervisor also testified about a 2001 report that one of Rose's children was failing to thrive.[12] After the report was filed, OCS removed two of Rose's children from her and Donna's home. When OCS took custody of the children, it arranged a mental health assessment for Rose. During the assessment Rose reported that she had been sexually and physically abused by Donna's then-boyfriend when they lived in Washington. Rose reported that after she told Donna about the abuse the boyfriend moved to a different city, but Donna later moved to rejoin him. When the boyfriend again attempted to abuse Rose, the police were called. The supervisor testified that "a fight ensued" and that Rose had reported that Donna screamed at her and blamed her for the boyfriend's arrest.

The supervisor testified that because of these reports OCS "was concerned about [Donna's] ability to care for a young child as well as her ability . . . to keep unsafe people out of the home." She stated that as a result OCS denied Donna's request to place Adric with her.

The second caseworker testified next. He summarized how Adric came into OCS custody and noted that Rose had relinquished her parental rights. The caseworker described the denial of Donna's first two requests to have Adric placed with her and the denial of her request for a variance. The caseworker testified that Donna's request for a variance was denied due to Jack's recent conviction for domestic violence; his failure to complete substance abuse and anger management treatment; the guardian ad litem's

---

[12] "Failure to thrive" is defined as "a condition in which an infant's weight gain and growth are far below usual levels for age." STEDMAN'S MEDICAL DICTIONARY 699 (28th ed. 2006).

opposition; and the history of domestic violence in Donna's home. Turning to Donna's most recent request for placement, he testified that it was denied due to concerns about Donna's past child protection issues, domestic violence, and her ability to protect Adric. The caseworker also testified that he believed Donna had only a limited understanding of child development.

The caseworker described Jack's arrests in 2011 and 2015 for assaulting Donna, as well as Donna's past requests for domestic violence restraining orders against Jack and her subsequent requests to dissolve the orders because she wanted Jack's financial support. He testified that OCS was concerned about Donna's "history of being in relationships with domestic violence."

The caseworker testified about a meeting he had with Donna at her home in March. At that time Donna told him that Jack had moved to Michigan for work and had found a substance abuse treatment center to attend. But the caseworker stated that Donna was unable to tell him the name or location or provide any information about the facility because "she was not that kind of wife to nag him . . . about that information." He also reported that Donna told him that there was "no talk of divorce right now" and that "it was up to [Jack]." The caseworker testified that he saw Jack's belongings in the house, that Jack was still on the apartment lease, that Jack was paying for storage of household items, and that there was no mechanism in place preventing Jack from returning. The caseworker stated there was no indication that Jack's move to Michigan was permanent, but admitted that he did not know for sure.

Next the caseworker detailed OCS's concerns about Donna and Rose's relationship. He stated that there had been "assaultive behavior between [them] in the past" and OCS was aware that Rose lived with Donna "whenever [Rose] is not incarcerated." The caseworker was concerned that Donna would allow Rose to move in with her and Adric if Rose needed a place to stay, even though Donna had said she

would force Rose to move out if OCS placed Adric with her. The caseworker testified that even if Jack moved out of the house permanently, he was concerned Donna's "alignment with [Rose]" was another reason not to place Adric with her. He testified that he was concerned that Donna did not have the protective capacity to keep Adric safe and that he did not believe Donna would call the police if either Rose or Jack came to her home, even if Rose was under the influence of drugs or alcohol or Jack was being violent.

Rose testified after the caseworker. She acknowledged living with Donna when she was released from jail, but stated she had moved into a shelter about two weeks before the hearing. And because she knew she could not live with Donna if Adric were placed with her, Rose said that she was therefore working with an agency to obtain housing. Rose asserted that even though her mother was the only person she had for support, other than those in "sober meetings," she would not go to Donna's home to talk if Adric were there.

Rose testified that she wanted Adric to be placed with Donna because "she's always been a . . . really good mother to me." She stated that although they had problems in the past, Rose "fe[lt] like [she] should [have] given [Donna] a chance." She admitted incidents of domestic violence between her and Donna where Rose had been the main aggressor. She also described her sexual assault by Donna's former boyfriend, and agreed with the OCS supervisor's testimony that Donna knew about the abuse when she followed the boyfriend to a different city and moved in with him again. Rose stated that it was "[Donna's] fault . . . that she didn't know any better [though] [s]he should've known better," and that "[s]he should've done more, but she was just sad for what she had done to me because she had chosen him over me."

Donna was the final witness. She testified about her relationship with Jack and addressed some of the allegations OCS had made about her past behavior. Donna

first described her current separation from Jack, stating that she had sent him away because "[h]e's just been mean and it's really just not worth it," and "he needs to change." She testified that "if he's not able to change, then I'm done." Donna admitted that she had not filed for divorce, saying that "[she] ha[s] to . . . but [she] would like to know what the judge says" before doing so. She stated that she would call the police if Jack tried to get into her home, or if Rose came to the house while she was either under the influence or off her prescribed medication. And Donna said that she would divorce Jack even if the court agreed with OCS's decision not to place Adric with her.

When Donna was questioned about Jack's departure she was unable to name the city where Jack had moved or the facility where he would start substance abuse treatment. She confirmed that his belongings were still in her home because she "ha[d] to wait for him to send . . . some money to pay for shipping it out to him." Donna also acknowledged Jack was still on the lease and was paying for a storage facility where they both kept belongings.

The court issued its written decision in July finding three "individually sufficient" grounds to "uphold [OCS]'s denial of [Donna]'s request for placement of [Adric] in her custody." The court first concluded that "nothing ha[d] changed since [its] prior ruling that [Jack] is a barrier to placement of [Adric] with [Donna]." The court found Donna's testimony was not sufficient to persuade it that Jack would not return to her home where he was legally entitled to live. The court also found that Donna was "willing to give [Jack] a chance to change" and "not willing to separate from [him]." The court affirmed OCS's denial of placement, finding that OCS presented clear and convincing evidence that Jack's presence in Donna's home created a barrier that justified denying Donna's request.

Next the court found that OCS had presented clear and convincing evidence that Donna's past child protection issues were good cause to deny Donna's request. The

court referred to Rose's testimony regarding Donna's moving in with the boyfriend she knew had abused Rose. Although it acknowledged Donna's testimony that she would protect Adric from Jack, the court stated that the testimony from both women "le[ft the] court with the belief that [Donna] will once again chose [sic] a relationship over a child in need of aid."

Finally the court found that OCS had presented clear and convincing evidence that Donna would not protect Adric from Rose, and that denying her request was justified on that ground. The court noted that Rose had only recently moved out of Donna's home, and that Donna had been unable to control Rose when Rose was a child. It found that there was nothing to show that Donna had "alter[ed] the cycle" of their behavior with each other or that she could now control Rose in order to protect Adric. The court therefore concluded that OCS's denial of Donna's request was justified on this basis.

Rose appeals the superior court's order affirming OCS's denial of Donna's request. She argues that the court clearly erred when it found that Donna remained in a relationship with Jack and that the relationship meant his conviction was a barrier to placing Adric with Donna. She also argues that it was clear error to find that Donna's child protection history or her relationship with Rose amounted to good cause to deny her request for placement. And she argues that the court made a number of errors in its factual findings, including relying upon information that was not admitted into evidence and identifying the wrong child as the subject of an earlier report to OCS.

## III. STANDARD OF REVIEW

In a child in need of aid case, we review factual findings for clear error.[13] "Findings of fact are clearly erroneous if a review of the entire record in the light most favorable to the prevailing party below leaves us with a definite and firm conviction that a mistake has been made."[14] Conflicting evidence is generally insufficient to overturn a trial court's factual findings.[15] We do not reweigh evidence when the record provides clear support for a trial court's ruling, and we grant deference to a trial court's credibility determinations.[16]

The parties disagree about the applicable standard of review. While we recognize that our previous cases may provide grounds for their disagreement, we need not decide the question today because the record supports the superior court's determination under any standard of review.[17]

---

[13] *See Charles S. v. Dep't of Health & Soc. Servs., Office of Children's Servs.*, 442 P.3d 780, 788 (Alaska 2019).

[14] *Steve H. v. Dep't of Health & Soc. Servs., Office of Children's Servs.*, 444 P.3d 109, 112 (Alaska 2019) (quoting *Sherman B. v. State, Dep't of Health & Soc. Servs.,Office of Children's Servs.*, 310 P.3d 943, 949 (Alaska 2013)).

[15] *See Charles S.*, 442 P.3d at 788.

[16] *See id.* at 788, 794.

[17] *Compare Shirley M. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 342 P.3d 1233, 1239 (2015) (referring to abuse of discretion standard under ICWA for deviating from placement preferences while noting mother's questionable standing in non-ICWA case), *with Dylan J. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, No. S-14641, 2012 WL 4840768, at *2 (Alaska Oct. 10, 2012) (noting standard of review under AS 47.14.100(e) was "unsettled"), *and Brynna B. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 88 P.3d 527, 529-30 (Alaska 2004) (relying on pre-2005 statute providing for de novo standard

(continued...)

## IV. DISCUSSION

### A. Good Cause To Deviate From Statutory Placement Preference

"When a child is removed from a parent's home, OCS is required to place the child with an adult family member, absent clear and convincing evidence of good cause to the contrary."[18] If OCS denies a request from an adult family member for placement of a child, that family member has the right to request a superior court hearing to review OCS's decision.[19] OCS then bears the burden of demonstrating by clear and convincing evidence that its denial of the placement request was justified.[20]

The superior court found three "individually sufficient" grounds to "uphold [OCS]'s denial of [Donna]'s request for placement of [Adric] in her custody." Rose argues that the court erred on each of the three. She first asserts the superior court erred by finding that Donna and Jack's relationship remained a barrier to Adric's placement with Donna due to Jack's conviction for a crime of domestic violence. Rose argues that Donna's testimony established that her relationship with Jack was over and that Jack had permanently moved out of her home and out of state. Rose claims that the evidence presented "demonstrated that Donna had remedied any potential risk to Adric based on Jack's prior conduct." She argues that the court erred when it found that OCS had good cause not to place Adric with Donna based on her relationship with Jack.

---

[17] (...continued) for placement review hearings), *and* Ch. 64, § 34, SLA 2005 (repealing and reenacting AS 47.14.100(e) and deleting statutory right to de novo review).

[18] *Shirley M.*, 342 P.3d at 1243; *see also* AS 47.14.100(e)(3)(A).

[19] AS 47.14.100(m); *see Irma E. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 312 P.3d 850, 853-54 (Alaska 2013).

[20] *Irma E.*, 312 P.3d at 854.

OCS contends that the court correctly found that there was clear and convincing evidence that Donna and Jack's relationship, and therefore his conviction, continued to create a barrier to placing Adric with Donna. It argues that the court appropriately exercised its discretion because Donna's testimony was equivocal and inconsistent about her separation from Jack and because the evidence showed that he could return to Donna's home at any time. OCS points out that its regulations prohibit placing a child in a home where a household member had been convicted of misdemeanor assault within the last five years.[21] And it notes that because the evidence established that Jack had been convicted four years before Donna's request, his conviction remained a barrier. OCS argues that it therefore had good cause to deny placement with Donna, and the superior court did not err when it affirmed the denial.

When the superior court affirmed OCS's denial based on Donna's relationship with Jack, it noted that nothing had changed since its previous ruling that Jack's conviction was a barrier to placing Adric with Donna. It found that five years had not passed since the date of his conviction,[22] and that Jack still resided in Donna's home. The court concluded that there was nothing to prevent Jack from returning: his name was on the lease, he still had belongings in the home, he was paying for rent or storage, and he could buy a one-way ticket back to Alaska if he wished. Nor did the court credit "[Donna]'s word" that Jack had permanently left. The court found that her testimony established that she was not willing to separate from Jack, was waiting for the court's decision before removing him from the home, and remained willing to give him a chance to change. The court concluded that OCS had demonstrated by clear and convincing

---

[21]     7 AAC 10.905(d)(1)(A) (listing assault in the fourth degree as five-year barrier crime).

[22]     *See* 7 AAC 10.905(I) (stating relevant time period runs from date that individual was charged with or convicted of crime, whichever ends later).

evidence that Donna's continued relationship with Jack made his conviction a barrier to placing Adric with her and justified OCS's denial of her request.

Rose urges us to conclude that the superior court erred when it concluded that Jack was likely to return to Donna's home and that their relationship had not permanently ended. But the court based its decision on the testimony presented during the review hearing, and "we will not second-guess the trial court's judgment of witness credibility where its determination is supported by the record."[23]

The court weighed Rose and Donna's testimony against that of OCS's witnesses. It recognized that Donna had testified that Jack had permanently left her home and that she had provided OCS a copy of his one-way ticket to Michigan. But it also considered Donna's testimony that she had not filed for divorce, or shipped Jack's possessions to him, and that he was still on the lease and paying for storage of their shared property. It was after explicitly weighing the testimony offered at the evidentiary hearing that the court concluded that "nothing has changed since this court's prior ruling that [Jack] is a barrier to placement of [Adric] with [Donna]." Because it based its decision on the witness testimony presented at the review hearing and determined that Donna's testimony was not credible about ending her relationship with Jack, "we grant 'especially great deference' " to the superior court's findings.[24]

Rose argues that the court mischaracterized and drew unreasonable inferences from the testimony. To agree with Rose's argument, we would have to reweigh the evidence presented. But, again, "we give particular deference to [a court's factual] findings when, as here, 'most of the trial evidence consists of oral testimony' "

---

[23] *Hockema v. Hockema*, 403 P.3d 1080, 1090 (Alaska 2017).

[24] *In re Hospitalization of Danielle B.*, 453 P.3d 200, 202-03 (Alaska 2019) (quoting *In re Hospitalization of Tracy C.*, 249 P.3d 1085, 1089 (Alaska 2011)).

because "[i]t is the function of the trial court, not of this court, to judge witnesses' credibility and to weigh conflicting evidence."[25] And even if it were possible to draw different inferences than the superior court, "[c]onflicting evidence is generally insufficient to overturn the superior court."[26]

The superior court's factual findings that Donna had not permanently ended her relationship with Jack and that his conviction for a crime that created a barrier to the placement of a child in Donna's home were not clearly erroneous. The court did not err when it determined that OCS had proven by clear and convincing evidence that Jack's conviction amounted to good cause to deny Donna's request that Adric be placed with her.[27]

## B.    Factual Errors In The Superior Court's Order

Rose also argues that the superior court erred by relying upon information in petitions and reports that were not admitted into evidence, by confusing which of Rose's children was the subject of a CINA case based upon his failure to thrive, and by minimizing Rose's sobriety. Rose argues that the court referred to allegations about Rose's behavior while she was pregnant with Adric even though they were made only in a petition that was not in evidence. She argues that the court also considered other allegations from the same petition, including that her parental rights to older children

---

[25]    *In re Adoption of A.F.M.*, 15 P.3d 258, 262 (Alaska 2001) (alteration in original) (first quoting *Silvers v. Silvers*, 999 P.2d 786, 792-93 (Alaska 2000); then quoting *Knutson v. Knutson*, 973 P.2d 596, 599-600 (Alaska 1999)).

[26]    *Charles S. v. Dep't of Health & Soc. Servs., Office of Children's Servs.*, 442 P.3d 780, 788 (Alaska 2019).

[27]    Because we conclude that the superior court did not err by finding that clear and convincing evidence supports OCS's decision to deny Donna's placement request based upon Jack's conviction for a barrier crime, we do not address the other grounds for denying her request.

were terminated and that she had admitted using drugs while pregnant. In addition Rose asserts that the superior court considered allegations about the conditions in Rose and Donna's home made in a 1999 report to OCS, even though the report was not admitted. Rose concedes, however, that "[i]t is unclear from the order to what extent the trial court relied on some of [these] findings in reaching its ultimate determination that OCS had good cause" to deny Donna's request that Adric be placed with her.

We agree with Rose that it was error to rely, to any extent, on information that is not in evidence.[28] But none of the information to which Rose objects relates to the superior court's determination that Jack's conviction for a barrier crime provides good cause to deny Donna's request. Such errors are therefore harmless.[29]

## V.   CONCLUSION

We AFFIRM the superior court's decision regarding OCS's denial of Donna's placement request.[30]

---

[28]      *See Diego K. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 411 P.3d 622, 629 (Alaska 2018) (holding that court must base factual findings and legal conclusions in CINA case "only upon evidence admitted pursuant to legal rules").

[29]      *Amy S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 440 P.3d 273, 279 (Alaska 2019) (quoting *Luther v. Lander*, 373 P.3d 495, 499 (Alaska 2016)) ("[W]e must disregard harmless errors that have no substantial effect on the rights of parties or on the outcome of the case.").

[30]      Because we affirm the denial of Donna's placement request based upon Jack's barrier crime, we do not reach her other appeal issues. *See Lucy J. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 244 P.3d 1099, 1112 (Alaska 2010). However, we caution judges to remain vigilant against appearing to make use of information that is not in evidence. *See Diego K.*, 411 P.3d at 629.