*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| C.L. (Mother), | ) | |
| | ) | Supreme Court Nos. S-18054/18068/ |
| Petitioner, | ) | 18071/18072 |
| | ) | (Consolidated) |
| v. | ) | |
| | ) | Superior Court Nos. |
| OPA GUARDIAN AD LITEM BRENDA | ) | 3KO-20-00012 CN; |
| FINLEY and STATE OF ALASKA, | ) | 3KO-19-00031-34 CN; |
| DEPARTMENT OF HEALTH & | ) | 3KO-20-00001-5 CN; |
| SOCIAL SERVICES, OFFICE OF | ) | 3KO18-18-00030 CN |
| CHILDREN'S SERVICES, | ) | |
| | ) | O P I N I O N |
| Respondents. | ) | |
| | ) | No. 7574 – December 23, 2021 |
| | ) | |
| D.R. (Father), | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| OPA GUARDIAN AD LITEM BRENDA | ) | |
| FINLEY and STATE OF ALASKA, | ) | |
| DEPARTMENT OF HEALTH & | ) | |
| SOCIAL SERVICES, OFFICE OF | ) | |
| CHILDREN'S SERVICES, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

F.P. (Father),                                    )
                                                  )
                    Petitioner,                   )
                                                  )
        v.                                        )
                                                  )
OPA GUARDIAN AD LITEM BRENDA )
FINLEY and STATE OF ALASKA,       )
DEPARTMENT OF HEALTH &            )
SOCIAL SERVICES, OFFICE OF         )
CHILDREN'S SERVICES,                  )
                                                  )
                    Respondents.                  )
_____)
                                                  )
J.P. (Father),                                     )
                                                  )
                    Petitioner,                   )
                                                  )
        v.                                        )
                                                  )
OPA GUARDIAN AD LITEM BRENDA )
FINLEY and STATE OF ALASKA,       )
DEPARTMENT OF HEALTH &            )
SOCIAL SERVICES, OFFICE OF         )
CHILDREN'S SERVICES,                  )
                                                  )
                    Respondents.                  )
_____)

Appeal from the Superior Court of the State of Alaska, Third
Judicial District, Kodiak, Stephen Wallace, Judge.

Appearances: Renee McFarland, Assistant Public Defender,
and Samantha Cherot, Public Defender, Anchorage, for
Petitioners. Elizabeth Russo, Deputy Director/Assistant
Public Advocate, and James E. Stinson, Public Advocate, for

Respondent Office of Public Advocacy. Laura Fox, Senior Assistant Attorney General, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for Respondent State of Alaska, Department of Health and Social Services, Office of Children's Services.

Before: Winfree, Chief Justice, Maassen, Carney, Borghesan, and Henderson, Justices.

BORGHESAN, Justice.

## I. INTRODUCTION

Alaska Child in Need of Aid (CINA) Rule 11(e) requires a child's guardian ad litem (GAL) to "disclose any relationships or associations" that "might reasonably cause the GAL's impartiality to be questioned." When the GAL makes such a disclosure — or such information comes to light by other means — what legal standards and process apply to determine whether the GAL's relationship is disqualifying? We hold that the Alaska Rules of Professional Conduct apply to determine whether the GAL has a disqualifying conflict of interest and that the superior court must permit limited discovery to ascertain the underlying facts for determining whether a disqualifying conflict exists.

## II. FACTS AND PROCEEDINGS

### A. Initial Proceedings

This matter arises out of four CINA cases from Kodiak. In each case the superior court appointed a guardian ad litem for the child through the Office of Public Advocacy (OPA), and in each case Brenda Finley, working under contract with OPA, appeared as the GAL. Pursuant to CINA Rule 11(e), Finley disclosed to the parties that she is a foster parent in another CINA case. She stated that she did not believe that her

role as a foster parent "will affect her ability to be [impartial] in this specific case, or in other cases."

A parent in each case moved for an evidentiary hearing "regarding whether Ms. Finley should be disqualified as a guardian ad litem." By stipulation the parties stayed this motion in three of the four cases pending the court's ruling in one case.[1] Arguing that Finley's role as a foster parent may create a conflict of interest due to her relationship with the Office of Children's Services (OCS) as both a foster parent and a GAL, the parents sought additional details to determine whether a conflict exists. They suggested the hearing would allow them to elicit information regarding Finley's past, present, and possible future tenure as a foster parent, the status of the cases in which she serves as a foster parent, her financial arrangements with OCS, and her relationship with OCS workers.

Both OCS and OPA filed qualified oppositions to the parents' request for a hearing. They argued that categorical disqualification of foster parents from serving as GALs is overbroad, that the court should provide clarity on what framework should govern the potential conflict, and that a low bar for disqualification would fail to recognize "the difficulty of keeping positions in child welfare staffed by qualified individuals, ideally with ties to the community . . . ." In their reply, the parents explained they intended to produce evidence supporting a claim of Finley's apparent bias but did not explain what this evidence was.

In a supplemental joint brief, OCS and OPA argued that GALs are advocates, not impartial investigators, and that the Alaska Rules of Professional Conduct governing lawyers should apply to determine whether Finley has a disqualifying conflict

---

[1]     For simplicity's sake, we refer to both this individual parent and the parents in all four cases who are petitioners in this appellate matter as "the parents."

of interest. Applying the Rules, the agencies contended there was no basis for an evidentiary hearing, let alone disqualification of Finley.

Attached to the brief was a sworn affidavit from Finley. She stated that she had fostered approximately 30 children since 2013. She stated that she understands her role as a foster parent is to support reunification, and that she and her husband try to help families succeed after reunification. Finley stated that she and her husband were currently foster parents to two children, but that she was not GAL to any of their current or former foster children and had "no plans to continue being a foster placement" following the two current foster children. Finley stated that she did not rely on foster care payments as income, understanding they are "not intended to be income" but to "cover a child's expenses." Finley stated that she had no personal friendships with any OCS workers.

In opposition, the parents argued that the Alaska Code of Judicial Conduct, not the Rules of Professional Conduct, should apply because "[a] guardian ad litem is a neutral party who gathers information and provides recommendations to the court." But the parents argued that, even under the Rules of Professional Conduct, the court should hold a hearing to satisfy the parents' due process rights.

The parties agreed to a judicial settlement conference on this dispute. After two conferences, they agreed on a threshold legal question for the superior court to decide:

> [W]hether the GAL is an advocate or an independent arm or agent of the court. If the GAL is an advocate the issue would be decided with reference to the professional rules of responsibility. If the GAL is an independent arm or agent of the court the issue would be decided with reference to the judicial canons of conduct.

The parties did not agree on whether the court should hold an evidentiary hearing on the issue.

## B.     Superior Court Order

The superior court denied the parents' motion for an evidentiary hearing on disqualification. Analyzing CINA Rule 11, which governs GALs, the court ruled that GALs are not "an 'arm' of the court" but rather serve a separate function, with the "sole purpose . . . to advocate for the best interests of the child." The superior court reasoned that the GAL functions more like a lawyer than an arm of the court, so the Rules of Professional Conduct apply.

Applying these Rules, the court held that a GAL would be disqualified only upon showing an actual conflict of interest under Alaska Rule of Professional Conduct 1.7. This rule prohibits representation if an advocate has a "concurrent conflict of interest," which exists when "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, . . . or by a personal interest of the lawyer."[2] The superior court explained that "[f]or purposes of this analysis, the 'client' must be viewed as the child." Assuming Finley was not serving as GAL and foster parent for the same child, the court concluded that "merely serving as a foster parent and receiving a support stipend from OCS for the child does not make her directly adverse to any child she is serving as a GAL."

The court determined that Finley's "foster parent relationship with OCS" was not disqualifying. It reasoned that the parents' motion raised the question whether Finley's relationship with OCS was "directly adverse" to a child for whom she serves as GAL. The court concluded that Finley's role as a foster parent in an unrelated case,

---

[2]     Alaska R. Prof. Conduct 1.7.

without any additional facts, does not create "a per se actual conflict" with her role as a child's GAL.

Addressing the parents' argument that Finley's financial relationship with OCS creates a potential conflict, the court concluded that foster parent payments "do not give rise to a 'client' relationship with OCS for purposes of the rule," so Finley owed OCS no legal duty. The court also determined Finley lacked a pecuniary interest that would create a conflict under Alaska Rule of Professional Conduct 1.8.[3] It concluded that Finley did not have "a conflict of interest per se simply based upon the fact that she is serving as a foster parent for OCS for children she is not appointed to provide GAL services for. The court finds that the 'appearance' of a conflict is not enough."

It then turned to whether the parents were entitled to an evidentiary hearing. It ruled that the "apparent" conflict set forth by the parents was insufficient to trigger the need for a hearing. The court reasoned that the parents would need to "allege specific facts beyond a financial relationship with OCS as a foster parent . . . which would give rise to an arguable 'actual' conflict of interest" to warrant a hearing. The parents did not meet their burden of pleading material facts entitling them to relief, the court held, so no hearing was required.

---

[3]     *See* Alaska R. Prof. Conduct 1.8(a) (providing that "[a] lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security, or other pecuniary interest adverse to a client," unless such interest is acquired on fair and reasonable terms disclosed to the client, the client has the opportunity to seek independent legal advice, and the client gives informed consent via signed writing).

The moving parent in each of the four cases petitioned for review.[4]  We consolidated the petitions for consideration, then granted the consolidated petitions and ordered full briefing.

## III.   DISCUSSION

This case concerns how superior courts and parties should proceed when a GAL has a relationship or association that "might reasonably cause the GAL's impartiality to be questioned."[5]

Although the parties' positions were relatively far apart below, they have converged substantially through the course of the proceedings in this court.  The parents originally argued that the analysis of a GAL's potentially disqualifying conflict of interest should be governed by the Code of Judicial Conduct; on appeal, they agree with OCS, OPA, and the superior court that a GAL's potential conflicts should be examined under the Rules of Professional Conduct.  And at oral argument, OCS and OPA both recognized there could be some situations when the GAL's disclosure of a potential conflict may warrant limited discovery and ultimately merit disqualification.

We first determine what framework governs a GAL's potential conflict of interest.  We agree with the parties and superior court that a GAL is an advocate and that the Rules of Professional Conduct therefore apply.  We then turn to the superior court's

---

[4]      Finley, the guardian ad litem, and the Office of Children's Services (OCS) are respondents in all four petitions.  C.L. is the mother and petitioner in S-18054.  D.R. is the father and petitioner in S-18068; A.I., the mother, is an additional respondent.  F.P. is the father and petitioner in S-18071; J.S., the mother, J.P., M.P., G.P., and L.P., the children, the Native Village of Larsen Bay, and the Sun'aq Tribe of Kodiak are additional respondents.  J.P. is the father and petitioner in S-18072; C.L., the mother, M.P., K.B., and K.B., the children, and the Native Village of Larsen Bay are additional respondents.

[5]      CINA Rule 11(e).

decision to deny the parents' request for an evidentiary hearing on Finley's potential conflict. Although Finley's disclosure did not necessarily entitle the parents to a hearing, it was error to deny the parents the opportunity to gather information relevant to determining the existence of the potential conflict.

### A. The Alaska Rules Of Professional Conduct Are The Appropriate Framework For Analyzing Conflicts Raised Under CINA Rule 11(e).

The parents argued in the superior court that GALs should be considered neutral investigators, so their conflicts of interest should be analyzed under the Code of Judicial Conduct. The parents relied in part on our holding in *Ogden v. Ogden* that "because court-appointed custody investigators are officers of the court and perform quasi-judicial functions, the Code of Judicial Conduct provides a helpful analytical framework" for determining whether a custody investigator should be disqualified due to a perceived conflict of interest.[6] But on appeal, the parents now agree with the superior court, OCS, and OPA that a GAL is an advocate and that a GAL's potential conflicts should be governed by the Rules of Professional Conduct. Nevertheless we independently review what framework should apply — a question of law — de novo.[7]

Under CINA Rule 11 a GAL "stands in the place of the child in court" and may engage in motion practice; conduct discovery; introduce evidence; examine and cross-examine witnesses; make objections, opening statements, and closing arguments; and take or participate in an appeal.[8] A GAL must be served with all relevant pleadings and papers and receive notice of all court proceedings, and has the right to appear and

---

[6] 39 P.3d 513, 516 (Alaska 2001).

[7] *See State v. Sharpe*, 435 P.3d 887, 892 (Alaska 2019); *Chloe W. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 336 P.3d 1258, 1264 (Alaska 2014).

[8] CINA Rule 11(a)(4).

participate at hearings on behalf of the child.[9]  A GAL should be sufficiently competent to "conduct an independent, thorough, and impartial investigation, and to advocate effectively for the best interests of the child."[10]  Like an attorney, a GAL "shall not communicate about the substance of the case with a party or person the GAL knows to be represented by a lawyer in the matter unless the GAL has the consent of the lawyer."[11] A GAL has no duties to the court beyond what is expected of an advocate — to present information about the child to the court, to ensure the child receives services — with the exception that a GAL must advise the court if the GAL believes it necessary to appoint counsel for the child.[12]  Instead, a GAL is bound to advocate for the child's best interests.[13]  The superior court concluded that the CINA Rules "do not appear to render a GAL subordinate to the court any more than any other attorney."  We agree.

There is some similarity between GALs in CINA cases and court-appointed custody investigators in private custody cases, whose conflicts of interest are governed by the Code of Judicial Conduct under our decision in *Ogden*.[14]  In particular, CINA

---

[9]     *Id*.

[10]     CINA Rule 11(c)(1).

[11]     CINA Rule 11(g)(2); *see* Alaska R. Prof. Conduct 4.2 ("[A] lawyer shall not communicate about the subject of the representation with a party or person the lawyer knows to be represented . . . unless the lawyer has the consent of the other lawyer . . . .").

[12]     *See* CINA Rule 11(f).

[13]     CINA Rule 11(f)(1) ("The GAL determines and advocates for the best interests of the child given the child's situation . . . .").

[14]     *Ogden v. Ogden*, 39 P.3d 513, 516 (Alaska 2001).

Rule 11(e), requiring the GAL to disclose potential conflicts, is phrased similarly to the rule governing impartial custody investigators.[15]

Yet because of the GAL's advocacy role in a CINA case — quite unlike the limited role and neutral role that the custody investigator plays[16] — the Rules of Professional Conduct are a better fit. And although CINA Rule 11(e), like the rule for custody investigators, refers to whether the GAL's "impartiality" might reasonably be questioned, the GAL's duty of impartiality can easily be squared with the GAL's advocacy role. A GAL must "conduct ongoing independent investigations"[17] — which may include "interviews with parents, social workers, teachers, and other persons as necessary to assess the child's situation"[18] — to help the GAL decide "what course of action is in the child's best interests."[19] Accordingly, a GAL must be impartial in investigating and determining what a child's best interests are; then the GAL must vigorously represent those interests as an advocate.

---

[15] *Compare* CINA Rule 11(e) ("The GAL shall promptly disclose any relationships or associations between the GAL and any party which might reasonably cause the GAL's impartiality to be questioned."), *with* Alaska R. Civ. P. 90.6(c) ("The custody investigator shall disclose any relationships or associations between the investigator and any party which might reasonably cause the investigator's impartiality to be questioned.").

[16] *See* Alaska R. Civ. P. 90.6(b) (providing that custody investigator must have qualifications "to conduct a thorough and impartial investigation and offer an informed opinion to the court regarding custody and visitation issues"); Alaska R. Civ. P. 90.7(a) cmt. ("The child custody investigator can provide the court and the parties with an independent analysis of the dispute . . . .").

[17] CINA Rule 11(f)(2)(A).

[18] *Id.*

[19] CINA Rule 11(b) cmt.

Because we agree with the parties and superior court that a GAL is an advocate, the Alaska Rules of Professional Conduct provide the proper framework for analyzing potential conflicts of interest.[20]

**B.      The GAL's Disclosure That She Is A Foster Parent In An Unrelated Case Entitles The Parents To Limited Discovery To Determine Whether A Disqualifying Conflict Exists.**

**1.      The analysis of Finley's potential conflict failed to adequately account for her personal interest in being a foster parent.**

Because the Alaska Rules of Professional Conduct apply to determine whether Finley's potential conflict is disqualifying, we must consider the Rules' standard for concurrent conflicts of interests.   Alaska Rule of Professional Conduct 1.7(a) provides that a concurrent conflict of interest exists if:

> (1) the representation of one client will be directly adverse to another client; or
>
> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by a personal interest of the lawyer.

Under the Rule, Finley would have a disqualifying conflict of interest if there were a "significant risk" that her personal interest in being a foster parent will "materially

---

[20]      The parents urge us to apply an additional standard set forth in *Daniels v. State*, a Court of Appeals decision.  17 P.3d 75 (Alaska App. 2001).  The analysis in *Daniels* focused on objective factors that might warrant disqualification even after a client waives a lawyer's conflict of interest:  (1) zealous representation being impeded by an ethical duty to a former client; (2) abuse of a former client's confidences; (3) protecting verdicts from trial tactics designed to create appealable issues; and (4) protecting the secrecy of attorney-client communications. *See id.* at 82-84.  Because there are few facts in the record about Finley's potential conflict, we do not address the application of *Daniels* to this case.

limit[]" her ability to investigate, identify, and advocate for a child's best interests as a GAL.

The superior court's decision does not directly analyze this issue, instead blurring the lines between Rules 1.7(a)(1) and 1.7(a)(2). The superior court first explained that the relevant interest was Finley's " 'personal financial interest' in being a foster parent," namely the stipend she receives for her foster placements. While the court reasoned that "the question raised" was whether this financial interest "will create a significant risk that her position as a GAL will be 'materially limited,' " — using the language of Rule 1.7(a)(2) — it concluded that the foster stipend "does not make her directly adverse to any child she is serving as a GAL," employing the Rule 1.7(a)(1) standard. The superior court also questioned whether Finley's financial relationship with OCS created a client relationship — which would also present a conflict of interest under Rule 1.7(a)(1) — and decided it did not.

The superior court correctly identified the relevant question as focused on whether "the foster parent relationship with OCS" materially limited Finley under Rule 1.7(a)(2). Yet it framed the analysis as whether Finley's relationship with OCS "is directly adverse to the child having her as a GAL," again echoing Rule 1.7(a)(1). While acknowledging that Finley's status as an OCS foster parent could create the appearance of a conflict, the superior court concluded that "it is not a per se actual conflict without more." Moreover, "because the GAL is required to disclose conflicts," the court explained that "the parties will always be alerted to the possibility of a conflict." The court noted that no party produced evidence that Finley was a GAL in any cases where she is also a foster parent.

Turning to the ultimate question of whether the parents were entitled to an evidentiary hearing, the superior court explained that the parents had asserted facts that, "if true, would only establish that Ms. Finley is a foster parent and that she is receiving

money from OCS while serving that function." Because these facts "would not without more[] amount to a conflict," the court denied the parents' request for an evidentiary hearing.

The superior court's analysis does not account for the full scope of Rule 1.7(a)(2). Specifically, the issue identified in this case is whether Finley's personal interest in being a foster parent may affect her ability to advocate as a GAL for a child's best interests. For example, suppose Finley wants to adopt her current foster children. If the OCS worker assigned to Finley's foster children is the same OCS worker assigned to cases in which Finley is a GAL, Finley might be concerned about displeasing the social worker or causing the social worker to question her judgment. She may decline to cross-examine the OCS worker as vigorously as an uninterested party would, or be more inclined to endorse OCS's position. This would harm Finley's ability to advocate for a child's best interests — precisely the sort of "material[] limit[ation]" that Rule 1.7(a)(2) concerns.

The superior court cited the commentary to Rule 1.7 explaining that a "critical question[]" is whether a potential conflict will materially interfere with an advocate's "independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of a client."[21] Yet the superior court did not undertake this critical inquiry in this case. For that reason the court's disqualification analysis was erroneous.[22]

---

[21] Alaska R. Prof. Conduct 1.7 cmt.

[22] We find erroneous not the superior court's factual findings but its application of the legal standard to such findings, a legal determination we review de novo. *See In re Hospitalization of Danielle B.*, 453 P.3d 200, 203 (Alaska 2019); *Sherman B. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 290 P.3d 421, 428 (Alaska 2012).

### 2.    Discovery is warranted under CINA Rule 8(f).

We turn to the question whether the superior court erred by denying the parents' request for an evidentiary hearing on Finley's potential conflict.[23]   OCS emphasizes the parents' concession that merely being a foster parent is not sufficient to disqualify a GAL and relies on our decision in *Hartley v. Hartley* to argue that the parents were not entitled to a hearing without alleging additional facts.[24]   We held in *Hartley* that "[a]n evidentiary hearing is not necessary if there is no genuine issue of material fact," affirming the superior court's denial of an evidentiary hearing in a contract case because the party "point[ed] to no evidence that would have resolved the ambiguity" in the contract.[25]

But *Hartley* is distinguishable from this case.  In a contract dispute, a party claiming that extrinsic evidence supports its interpretation of the contract should know what that evidence is.[26]   It therefore makes sense to rule in that context that if the party does not identify the evidence that will be revealed at the hearing, the party is not entitled to one.  Here the parents have no reason to be aware of facts about Finley's foster care work because CINA cases are confidential.[27]   Unlike in *Hartley*, the superior court cannot expect the parents to provide all relevant information regarding a potential

---

[23]    *See Johnson v. Johnson*, 239 P.3d 393, 406 (Alaska 2010) ("[W]e exercise our independent judgment in determining whether there are genuine, material factual disputes that cannot be resolved without an evidentiary hearing.").

[24]    205 P.3d 342 (Alaska 2009).

[25]    *Id*. at 350.

[26]    *See id.*

[27]    *See* CINA R. 22 (requiring confidentiality of records); CINA R. 3(f) (closing certain CINA hearings to public).

conflict, as most of it is beyond their grasp. Therefore, the parents' inability to point to specific evidence about the nature of the potential conflict is not a proper justification to deny the parents an opportunity to investigate it.

At oral argument, both OPA and OCS acknowledged that there could be some instances in which the GAL's role as a foster parent in an unrelated case may merit disqualification and that some discovery would be warranted. But both maintained that the disclosure of a potential conflict by a GAL does not necessarily warrant a hearing, emphasizing the risk of delay in cases that are supposed to be expedited and the risk that a free-ranging inquiry into the GAL's personal life will dissuade qualified people from wanting to serve in both of these important roles.

The CINA Rules provide the solution for this problem. CINA Rule 8(f) permits parties to receive limited discovery from a GAL:

> (1) *Discovery of Documents in Guardian Ad Litem's Possession.* A party may obtain discovery of documents in the possession, custody, or control of the guardian ad litem, subject to the [limitations of Alaska Civil Rules 26(b)(1) and (b)(3)].
>
> (2) *Discovery Regarding Guardian Ad Litem's Testimony.* If the guardian ad litem has served notice that the guardian ad litem intends to testify, a party may obtain discovery from the guardian ad litem about the substance of this testimony.
>
> (3) *Other Inquiry.* A party may obtain other discovery from a guardian ad litem only as permitted by the court upon a showing of good cause. The court may permit a party to question a guardian ad litem about the guardian ad litem's professional qualifications and experience or the guardian ad litem's performance in the case. But this inquiry must be conducted in the presence of the court.

Subsection (f)(3) of this Rule gives a party the ability to request, and a court the discretion to allow, discovery into a potential conflict including, as here, one stemming

from a GAL's role as a foster parent in an unrelated case. This procedure also allows the superior court to place guardrails on the discovery process so that it is not more invasive than necessary — either for the GAL or the families for whom the GAL may serve as a foster parent. The superior court may, for example, authorize discovery through the use of interrogatories, which could foreclose the need for a hearing in some cases.

The superior court has the discretion to decide the appropriate scope and process for sensitive discovery of this nature. This process should not be a lengthy one — the use of tools like interrogatories should significantly quicken the process — and we have no reason to believe discovery of this kind will frequently be needed. We emphasize that a party is *not* automatically entitled to discovery about a GAL's personal life. It is only if evidence of a potential conflict comes to light, whether by the GAL's disclosure under CINA Rule 11(e) or otherwise, that this kind of discovery would be warranted. In light of Finley's disclosure, the court must permit some discovery on the questions the parents identified in their request for hearing, such as the status of cases in which Finley serves as a foster parent, how long Finley has been a foster parent, and the nature of Finley's relationships with the OCS representatives with whom she works as both a foster parent and GAL. It is left to the superior court's discretion to decide the precise scope and format of this discovery.

## IV. CONCLUSION

For the reasons stated above, we REVERSE the superior court's decision and REMAND for additional proceedings consistent with this opinion.