BOLGER, Justice,
dissenting.
The Indian Child Welfare Act creates important procedural rights for Indian eustodi-ans.[1] For example, in any state court involuntary proceeding involving an Indian child, "the party seeking the foster care placement of, or termination of parental rights to" that child must provide notice to the Indian custodian of the proceedings and of his or her right to intervene,[2] and an indigent Indian *311 custodian has a statutory right to court-appointed counsels.[3]
Here, the superior court ultimately concluded that Molly was an Indian custodian for ICWA purposes at the time OCS filed its initial petition. In my view, Molly's Indian custodian status should have been apparent after minimal inquiry because (1) the children had been living with her for months, (2) Molly brought the children to the attention of OCS, and (3) OCS immediately returned the children to her care. The superior court should have appointed counsel to represent Molly at the very first hearing and provided notice to all parties of Molly's status as an Indian custodian.
However, this court's decision reasons that the superior court's failure to provide notice and counsel to Molly was harmless because Aaron and Jessica objected to Molly's custodianship at a meeting with OCS a few days later. I respectfully disagree with this conclusion.
If the court had properly recognized Molly's status and appointed counsel for her, then the course of the following proceedings may well have been much different. Aaron and Jessica may have realized the benefits of continuing Molly's status as an Indian eusto-dian. Molly may have chosen to participate in the team decision meetings where the parties discussed the children's placement. And with competent representation, Molly would have recognized her statutory right to judicial review of OCS's later decision to remove the children from her care.[4]
In a criminal case, interference with a defendant's right to counsel is often considered to be a structural error that requires reversal because the consequences of such an error "are necessarily unquantifiable and indeterminate." [5] Similar considerations leave me skeptical about this court's conclusion that there was no harmful consequence from the failure to appoint counsel for Molly. I respectfully dissent.

. See 25 U.S.C. § 1912 (2013).

. § 1912(a).

. § 1912(b).

. See AS 47.14.100(m); Irma E. v. State, Dep't of Health & Soc. Servs., 312 P.3d 850, 853-54 (Alaska 2013).

. Cook v. State, 312 P.3d 1072, 1088 (Alaska 2013) (Maassen, J., dissenting) (quoting United States v. Gonzalez-Lopez, 548 U.S. 140, 150, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006)); see also McKinnon v. State, 526 P.2d 18, 24 (Alaska 1974).