NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

# THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| CELIA W. and BOYD W., | ) |
| | ) Supreme Court No. S-17954 |
| Appellants, | ) |
| | ) Superior Court No. 4FA-19-00135 CN |
| v. | ) |
| | ) MEMORANDUM OPINION |
| STATE OF ALASKA, DEPARTMENT | ) AND JUDGMENT* |
| OF HEALTH & SOCIAL SERVICES, | ) |
| OFFICE OF CHILDREN'S SERVICES, | ) No. 1849 – September 15, 2021 |
| REGGIE A., and KIRA A.. | ) |
| | ) |
| Appellees. | ) |
| | ) |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Earl A. Peterson, Judge.

Appearances: Mila A. Neubert, Neubert Law Office, LLC, Fairbanks, for Appellants. Laura Wolff, Assistant Attorney General, Anchorage, Mary Ann Lundquist, Assistant Attorney General, Fairbanks, and Treg R. Taylor, Attorney General, Juneau, for Appellee State of Alaska, Department of Health & Social Services, Office of Children's Services. Rachel Cella, Assistant Public Defender, and Samantha Cherot, Public Defender, Anchorage, for Appellee Kira A. Megan C. Comolli, Assistant Public Advocate, Fairbanks, and James Stinson, Public Advocate, Anchorage for Appellee Reggie A. Nikole V. Schick, Assistant Public Advocate, Fairbanks, and James Stinson, Public Advocate, Anchorage, for Guardian Ad Litem.

---

\*      Entered under Alaska Appellate Rule 214.

Before: Winfree, Maassen, and Borghesan, Justices. [Bolger, Chief Justice, and Carney, Justice, not participating.]

## I. INTRODUCTION

The grandparents of a child in foster care argue that the Office of Children's Services (OCS) should have placed their grandson with them instead of with the non-relative foster family that was caring for the boy's brother. Alaska Statute 47.14.100(e) requires OCS to place a foster child in the care of an adult relative absent clear and convincing evidence of good cause to deviate from that requirement. The grandparents argue that OCS lacked the requisite good cause and that the superior court erred in its review of OCS's placement decision.

We conclude that OCS has shown clear and convincing evidence of good cause to deviate from the statutory placement preferences. Our conclusion rests on the superior court's findings about the strength of the child's bond with his brother and the relative weakness of his relationship with his grandparents. We therefore affirm.

## II. FACTS AND PROCEDURAL HISTORY

In July 2019 OCS filed an emergency petition for temporary custody of Dylan,[1] then seven years old. OCS had already taken custody of Dylan's thirteen-year-old adoptive brother, Derek, based on evidence of physical and sexual abuse by the boys' parents.

The superior court found probable cause to believe that Dylan was a child in need of aid and granted temporary custody to OCS. OCS then placed Dylan in a non-relative foster home. In December 2019 Dylan's parents stipulated that he was a child in need of aid and agreed to temporary OCS custody.

---

[1] We use pseudonyms to protect the privacy of the parties.

Dylan's aggression toward other children in his foster home led the foster family to ask OCS to find a new placement for Dylan. Dylan's maternal grandmother, Celia, requested that Dylan be placed with her and his grandfather, Boyd. Family friend Ralph — who was then fostering Dylan's brother Derek[2] — also requested placement. OCS opted to place Dylan with Ralph.

OCS denied Celia's request for placement because, as explained in a June letter, it found that the grandparents were "not aligned with the identified safety threats," that they "question[ed] the integrity of the disclosures [of sexual abuse]," that Boyd was "not aligned with the need for [Dylan] to continue therapy," and that Boyd had failed to disclose past criminal convictions.

Dylan's mother Kira opposed the change in placement and requested a hearing under Alaska Child In Need of Aid Rule 19.1(b).[3] The superior court postponed the hearing while OCS reconsidered placement with the grandparents. After reconsideration, OCS stuck by its May decision and placed Dylan with Ralph in late June. OCS argued that placement with Ralph was in Dylan's best interests because it

---

[2] Derek and Dylan are no longer, legally speaking, brothers. Dylan's parents adopted Derek but have relinquished their parental rights to him, which severed the legal relationship between the boys. However, the superior court found by clear and convincing evidence that "[Derek] is now and has always been [Dylan's] brother from [Dylan's] perspective." What is important for purposes of this appeal is not the legal status of Dylan and Derek's relationship but the emotional bond they share from being raised as brothers.

[3] CINA Rule 19.1(b) provides:

At any time in a proceeding, a party who is opposed to the Department transferring a child from one placement to another may move the court for a review hearing at which the requesting party must prove by clear and convincing evidence that the transfer would be contrary to the best interests of the child.

would: (1) place him with his brother; (2) keep him in the same community and school; and (3) keep him close to his parents for visitation. Dylan's therapist and guardian ad litem both supported placement with Ralph, and Dylan said he wanted to live with his brother in Ralph's home.

The superior court held a placement review hearing over three days in July, hearing testimony from the OCS caseworker, Kira, both grandparents, and Dylan's therapist. The superior court affirmed Dylan's change of placement in early August. The court summarized the witness testimony and made specific findings of fact. The court found by clear and convincing evidence that it was in Dylan's best interests to be "placed in a foster home with [Derek]." The court found "by a preponderance of the evidence that [Dylan did] not have a historically strong relationship with the [grandparents] and the [grandparents] do not fully appreciate the type of household and parenting style that [Dylan] needs such that it is not in [Dylan's] best interests to place him with the [grandparents]."

The court explained that Kira had not carried her burden to prove by clear and convincing evidence that placing Dylan in Ralph's home was not in Dylan's best interests.[4] Instead the court found by clear and convincing evidence that this placement was in Dylan's best interests. The court relied on the therapist's "credible and compelling testimony that [Dylan's] best interests are served by being placed with his older brother and by being placed with an active family." The court dismissed Kira's "testimony about how being placed with [Ralph] could be detrimental to [Dylan]" as "speculative."

The grandparents attended all three days of the July hearing. Before the second hearing day, they requested review of the denial of their placement request. The

---

[4]     *See* CINA Rule 19.1(b).

superior court held their request for review in abeyance until they could obtain counsel. The grandparents' attorney filed an entry of appearance in November, and the hearing on the grandparents' motion began that same day.

The hearing on the grandparents' motion spanned five days. The court heard testimony from Kira, Ralph, Dylan's therapist, both grandparents, and an expert witness for the grandparents.

The superior court affirmed OCS's denial of the grandparents' request for placement. The court first summarized the testimony at the November hearing and then adopted the findings and conclusions of its August order.

The court then fully quoted the relevant parts of AS 47.14.100(e):

> The department shall place the child, in the absence of clear and convincing evidence of good cause to the contrary,
>
> . . . .
>
> (3) with, in the following order of preference,
>
> > (A) an adult family member;
> >
> > (B) a family friend who meets the foster care licensing requirements established by the department . . . .

The court also explained that AS 47.14.100(m) "guides the court on what may and may not be considered good cause."[5]

---

[5]    AS 47.14.100(m) provides:

> Prima facie evidence of good cause not to place a child with an adult family member or family friend . . . includes the failure to meet the requirements for a foster care license . . . . Prima facie evidence of good cause . . . does not include poverty or inadequate or crowded housing. If the department denies a request for placement with an adult family member

(continued...)

Considering these statutes, the court found "by clear and convincing evidence that OCS did not abuse its discretion in denying placement of [Dylan]" with the grandparents. In support of this conclusion, the court emphasized the benefits of placement with Ralph: (1) Dylan is with his brother, which is what Dylan wanted; (2) placement with Ralph involves "doing all of the things one might think of a family and child doing, even in light of the ongoing pandemic, while still maintaining contact with his parents and grandparents through visitation"; (3) Dylan is "getting the mental health treatment he appears to need"; and (4) he remains in the same school, same community, and with access to the same religious services as before removal.

The court acknowledged that this placement is a deviation from the statutory preference, but concluded that "good cause is shown by the evidence before the court for this variance." The court acknowledged that an error in classification of Boyd's criminal history had contributed to the initial denial of placement but still found good cause for deviation. In support of this finding, the court noted: (1) Boyd had "no prior relationship" with Dylan; (2) Celia "had only had passing contact with [Dylan]"; (3) Ralph was a close personal friend of the family; (4) "issues were raised in May and June that the [grandparents] questioned the allegations and safety needs in this case"; (5) "questions surrounded the [grandparents'] understanding of [Dylan's] mental heath needs and their willingness to provide for those needs"; (6) both Dylan's therapist and the grandparents' expert "opined that the [grandparents] were not ready to take in [Dylan] in June . . . and in fact remain not ready today"; and (7) the court still had "some

---

⁵ (...continued)
or a family friend, the department shall inform the adult family member or family friend of the basis for the denial and the right to request a hearing to review the decision.

doubt that [Celia would] not substitute her own values or choices when they are in conflict with choices made by OCS for [Dylan's] well being."

The grandparents appeal from this order.

## III. STANDARD OF REVIEW

Both the grandparents and OCS suggest that we review the superior court's ruling as a mixed question of law and fact. In making this suggestion, both parties rely on our recent decision in *State, Department of Health & Social Services, Office of Children's Services v. Zander B.*[6] But *Zander B.* is not exactly on point. There OCS followed the statutory placement preference.[7] In that type of case, we review the superior court's factual findings for clear error and use our independent judgment to evaluate the superior court's determination of whether OCS abused its placement discretion.[8]

Here OCS deviated from the statutory placement preference. Although OCS generally has broad discretion in making placement decisions,[9] that discretion is narrowed by the placement preferences established by AS 47.14.100(e). Thus the superior court should not review a deviation from the placement preference for abuse of discretion. Rather the superior court must determine whether OCS showed by clear and convincing evidence that it had good cause to deviate from the placement preference.[10]

---

[6] 474 P.3d 1153 (Alaska 2020).

[7] *Id.* at 1157.

[8] *Id.* at 1162.

[9] *See In re B.L.J.*, 717 P.2d 376, 380 (Alaska 1986).

[10] *See* AS 47.14.100(e); *Irma E. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 312 P.3d 850, 854 (Alaska 2013).

Our own standard of review in such cases is unsettled. We have at times "review[ed] the superior court's finding of good cause to deviate from . . . placement preferences for an abuse of discretion."[11] In other cases, we have reviewed the issue using our independent judgment.[12]

We need not resolve the issue in this case. Even under the least deferential standard of review that could apply — reviewing factual findings for clear error and the good cause question using our independent judgment — we determine that there was clear and convincing evidence of good cause to deviate from the statutory placement preference. For purposes of this decision, we assume that the grandparents are correct about the standard of review. We therefore review the case as a mixed question of law and fact.

Under this approach, when OCS deviates from the statutory placement preference the superior court must make factual findings and then determine whether, as a matter of law, the facts found establish good cause to deviate.[13] We then review the superior court's factual findings for clear error and use our independent judgment to determine whether those findings show clear and convincing evidence of good cause to deviate from the statutory placement preference.[14]

---

[11] *Shirley M. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 342 P.3d 1233, 1239 (Alaska 2015) (second alteration in original).

[12] *See Brynna B. v. State, Dep't of Health & Soc. Servs., Div. of Fam. & Youth Servs.*, 88 P.3d 527, 529-30 (Alaska 2004) (relying on an older version of AS 47.14.100(e) that explicitly provided for de novo review in the superior court).

[13] *See* AS 47.14.100(m).

[14] *Cf. Kylie L. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 407 P.3d 442, 448 (Alaska 2017) (reviewing whether OCS made reasonable efforts to reunify family as mixed question of law and fact).

## IV.  DISCUSSION

### A.  OCS Established Clear And Convincing Evidence Of Good Cause To Deviate From The Statutory Placement Preference.

"When a child is removed from a parent's home, OCS is required to place the child with an adult family member, absent clear and convincing evidence of good cause to the contrary."[15]  An adult family member who is denied placement has the right to a hearing in superior court.[16]  At that hearing OCS bears the burden of showing clear and convincing evidence of good cause to deviate from the statutory placement preference.[17]

OCS carried its burden by presenting testimony that established Dylan's strong bond with his brother Derek and the need to preserve this relationship for Dylan's well-being.  Dylan's therapist testified that Dylan saw his brother as "a protector," that Dylan wanted to be placed with Derek, that the sibling bond was an "important, significant relationship," and that their lifelong bond was founded in "love and caring." The superior court found the therapist "highly credible."  Kira raised concerns about

---

[15]     *Shirley M.*, 342 P.3d at 1243 (citing AS 47.14.100(e)(3)(A)).

[16]     AS 47.14.100(m); CINA Rule 19.1(e).

[17]     *Irma E. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 312 P.3d 850, 854 (Alaska 2013).

Kira argues that Alaska courts should look to ICWA regulations to define "good cause" in non-ICWA cases.  Although AS 47.14.100(e) resembles the ICWA placement preference provision at 25 U.S.C. § 1915(b), this similarity alone does not lead us to believe that the legislature intended to incorporate after-enacted regulations defining "good cause" for purposes of a different statute.

Dylan's placement with Derek, but the superior court discounted her testimony as self-serving and lacking credibility.[18]

In comparison, the evidence shows a much less significant bond between Dylan and his grandparents. The grandparents conceded that Boyd had not had a relationship with Dylan prior to OCS involvement in the case. And although Celia's contact with Dylan was more frequent, it was limited to short visits "six to eight times a year." The superior court found by clear and convincing evidence that it was in Dylan's best interests to be placed with his brother and by a preponderance of the evidence that Dylan's relationship with his grandparents was not "historically strong."

These findings — the importance of the sibling relationship and relative weakness of the grandparent relationship — are not clearly erroneous and suffice to establish good cause to deviate from the placement preference that would otherwise favor the grandparents.

Some of the other arguments offered by OCS and accepted by the superior court do not establish clear and convincing evidence of good cause. Both OCS and Dylan's therapist criticized the grandparents' parenting style and suggested that the grandparents were "authoritarian" or "threatening." But those impressions were not supported by details of underlying incidents that would justify such conclusory statements. At other times OCS claimed that the grandparents were "not aligned" with Dylan's mental health needs or did not take the concerns of abuse seriously. Again these assertions were not supported by evidence of the details that caused OCS to come to those conclusions. Subjective impressions alone — without any evidence showing what

---

[18]     We give "particular deference" to the superior court's credibility determinations. *Jordan v. Jordan*, 480 P.3d 626, 633 (Alaska 2021).

those impressions are founded on — cannot be clear and convincing evidence of good cause.

But although these subjective impressions do not support a determination of good cause, they do not detract from the evidence of good cause that does exist — the strength of the sibling relationship and the importance of maintaining that relationship to Dylan's well-being.[19] Those facts alone establish, in our independent judgment, good cause to deviate from the preference in favor of the grandparents. For that reason we affirm the superior court's decision.

### B. The Superior Court's Order Denying The Mother's Placement Challenge Is Not On Appeal.

The grandparents argue that the superior court applied "the wrong burden of proof in its first affirmance of OCS's decision" to place Dylan with Ralph. They refer to the August order in which the superior court determined that Kira failed to prove by clear and convincing evidence that placement with Ralph was not in Dylan's best interests. Emphasizing that placement with Ralph is a deviation from the statutory preference for placement with an adult family member, they argue that putting the burden of proof on Kira was inconsistent with the statutory mandate that OCS have "clear and convincing evidence of good cause" to deviate from that statutory preference.

The August decision is not before this court on appeal, so we do not decide whether the court applied the proper legal standard in that ruling. Although the November ruling relied on factual findings made in the August order, those factual findings are independent of the legal standard the court applied in determining whether

---

[19] *See Amy S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 440 P.3d 273, 279 (Alaska 2019) ("Even if we conclude that an error has been committed, '[w]e must disregard harmless errors that have no substantial effect on the rights of parties or on the outcome of the case.'" (alteration in original) (quoting *Luther v. Lander*, 373 P.3d 495, 499 (Alaska 2016))).

Kira met her burden to challenge OCS's placement decision. Relying on the August factual findings does not taint the November order even if the legal standards applied in August were erroneous.

**C.    The Grandparents' Other Claims Of Error Are Either Misplaced Or Harmless.**

The grandparents argue that they were disadvantaged because the reasons for denial of placement that OCS gave in its initial letter differed from the reasons it presented to the superior court and the reasons the judge ultimately relied on to affirm. But any such error is harmless. The grandparents had ample notice of the reasons that OCS presented in the November hearing. The key issue — Dylan's bond with his brother and its relative strength when compared to his bond with the grandparents — was thoroughly litigated in the July hearing and was explicitly relied upon in the superior court's August order.[20] The grandparents attended that hearing and thus were on notice of OCS's position. Although the stated reasons for OCS's denial of placement changed over time, they did not do so in a way that prejudiced the grandparents' ability to challenge OCS's decision.

The grandparents argue that OCS used a double standard when evaluating their placement request against Ralph's. They argue that OCS faulted them for being unprepared to meet Dylan's mental health needs and for lacking a prior strong relationship with their grandson even though OCS did not require those same things of Ralph. Neither OCS nor the superior court applied a double standard. True, there was not strong evidence that Ralph's relationship with Dylan was more meaningful than

---

[20]    While the August order was not distributed directly to the grandparents, it was distributed to the father's attorney, who told the superior court she had been facilitating the grandparents' involvement in the case until they were able to hire their own attorney.

Celia's or that Ralph was especially well suited to meet Dylan's mental health needs. But the superior court's decision does not rest on the relative strength of Ralph's bond with Dylan or on Ralph's special suitability as a caretaker. It rests on the strength of Dylan's bond with his brother, who had already been placed in Ralph's home. The superior court's reliance on the strength of the sibling bond — especially when compared to Dylan's limited contact with his grandparents prior to OCS involvement — satisfies the good cause requirement.

The grandparents also accuse OCS and the superior court of imposing their own personal or subjective values on the case. The superior court cited some of OCS's impressions of the grandparents' parenting style in its first ruling affirming the placement decision. As explained above, reliance on such subjective and conclusory testimony is problematic. But as a legal matter, any error in relying on this testimony is harmless. The superior court's findings on the importance of Dylan's relationship with his brother independently establish good cause to deviate from the placement preference.

The grandparents argue it was error for the superior court to deny placement when OCS actively worked against their efforts to resolve OCS's concerns by limiting their communication with Dylan's therapist. But this conduct happened after the June 2020 decision to deny placement had already been made. So whether or not OCS's actions in this regard were wise or fair, they are not relevant to the superior court's determination of whether there was good cause to deviate from the placement preference in June. Nor are they relevant to our consideration of the same question.

Finally the grandparents argue that the superior court erred in relying on the potential harm of moving Dylan again to affirm OCS's placement decision. In its November order, the superior court mentioned that "it would be deleterious to [Dylan's] mental health treatment to remove him from his current placement at this time." We agree with the grandparents that whether it would be harmful to remove Dylan from

Ralph's home months after Dylan was placed there is irrelevant to whether OCS had good cause to place Dylan in Ralph's home to begin with. But again, because we conclude, using our independent judgement, that the evidence about preserving the sibling bond establishes clear and convincing evidence of good cause to place Dylan with Ralph, any error in the superior court's reliance on this factor is harmless.

## V.    CONCLUSION

We AFFIRM the superior court's decision.