NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

FIONA M., )
) Supreme Court No. S-18666
Appellant, )
) Superior Court No. 3PA-20-00068CN
v. )
) MEMORANDUM OPINION
STATE OF ALASKA, DEPARTMENT ) AND JUDGMENT*
OF FAMILY AND COMMUNITY )
SERVICES, OFFICE OF ) No. 1998 – November 15, 2023
CHILDREN'S SERVICES, )
)
Appellee. )
)

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Kristen C. Stohler, Judge.

Appearances: Olena Kalytiak Davis, Anchorage, for Appellant. Robert Kutchin, Assistant Attorney General, Anchorage, and Treg Taylor, Attorney General, Juneau, for Appellee.

Before: Maassen, Chief Justice, and Carney, Borghesan, Henderson, and Pate, Justices.

## I. INTRODUCTION

A mother appeals the termination of her parental rights. She argues that the Office of Children's Services (OCS) failed to make reasonable efforts to reunify her

---

\* Entered under Alaska Appellate Rule 214.

with her child.  There were significant gaps in OCS's efforts, especially with regard to visitation.  But OCS's efforts were reasonable when considered in their entirety.  We therefore affirm the superior court's order terminating the mother's parental rights.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

#### 1.    Jared's first removal and the efforts by OCS

Jared was born to Fiona M. and Justin S. in May 2020.[1]  Fiona tested positive for opiates and methadone at the time of Jared's birth.  Jared's umbilical cord also tested positive for opiates and methadone.

A week later OCS filed a non emergency petition to adjudicate Jared as a child in need of aid and take temporary custody.  Later in May, when Jared was ready to be discharged from the hospital, OCS converted that petition to an emergency petition.

In June Fiona entered an inpatient substance abuse treatment program. OCS placed Jared with Fiona at the treatment center on a trial visit.  OCS created a case plan in July recommending that Fiona complete inpatient treatment and receive outpatient care.  The plan also included random urinalysis (UAs), family contact between Fiona and Jared, and parenting classes.  OCS additionally directed Fiona to ensure her home was a safe environment free of illicit substances.

In August Fiona stipulated without admitting any facts that Jared was a child in need of aid under AS 47.10.011(10) (substance abuse).  OCS allowed Jared to remain with Fiona on a trial home visit after she completed inpatient treatment.  But this trial home visit ended after Fiona permitted unsupervised contact between Jared and Justin while Justin was still using substances.

#### 2.    Jared's second removal and the efforts by OCS

---

[1]    We use pseudonyms to protect the family's privacy.

In late October 2020 the court committed Jared to OCS custody for up to two years. After the trial home visit with Fiona failed, OCS placed Jared with his maternal grandmother, where he remained from November 2020 until July 2021. During this time the maternal grandmother coordinated supervised visitation between Fiona and Jared. But this placement also ended unsuccessfully after the maternal grandmother permitted unsupervised overnight visits between Jared, Fiona, and Justin. Following these incidents, hair follicle testing revealed "multiple illicit substances" in Jared's system.

After Jared's placement with his maternal grandmother ended in July 2021, OCS placed Jared locally with his maternal aunt. Fiona's caseworker discussed the possibility of supervised visitation between Jared and Fiona with the maternal aunt. At that point in the case, however, the maternal aunt did not feel comfortable facilitating visits.

OCS filed a petition to terminate Fiona's parental rights in November 2021. OCS attempted to serve Fiona with the termination petition in December, but its certified mailing was returned. Although Fiona met with an OCS caseworker in February 2022, as of March 2022, further attempts to serve Fiona with the termination petition by both judicial services and mail service were unsuccessful. At that point OCS did not "have any other leads" on how to serve her. When OCS requested to serve Fiona by publication, Fiona's attorney took no position. The court ordered service of process by publication in April 2022.

OCS assigned a new caseworker in February 2022. The caseworker met with Fiona shortly after being assigned. At that time OCS determined Fiona had made no progress toward reaching her case plan goals. OCS made referrals for UAs, which Fiona expressed a willingness to take, and provided Fiona with bus passes. Fiona wanted to have a visit set up with Jared. The caseworker also spoke to Fiona about opportunities to seek additional substance abuse treatment with a range of providers.

The caseworker believed that Fiona previously completed assessments with some of those providers. But Fiona then fell out of contact "for several months." The case worker explained that Fiona had "good intention[s]" but "the pattern of not showing up to UAs . . . indicate[d] . . . [Fiona] may be using and do[es]n't want to have that bad track record."

In June 2022 Fiona gave birth to Cal. At the time of Cal's delivery, Fiona reported having used methamphetamine and heroin throughout her pregnancy. Cal tested positive for controlled substances at birth. Hospital staff made a report of harm to OCS. OCS later took temporary custody of Cal.[2] In September Fiona completed a substance abuse assessment with a new provider, which recommended a second round of inpatient treatment. At that time Fiona expressed "that her ambition was to enter inpatient treatment," but she had not entered inpatient treatment at the time of trial in November 2022.

OCS next referred Fiona to the Tribe that would facilitate supervised visitation with Jared in June 2022.[3] The caseworker testified that she was unaware if OCS had made any other visitation referrals between July 2021 and June 2022. When the caseworker was asked why she had waited four months after first meeting Fiona in February to make a visitation referral with the Tribe, she responded, "[N]o reason besides busyness." But the caseworker also explained that Fiona had a pattern of seeming very willing to engage with services when they were offered, but then going missing and not following through on case plan activities. Although the Tribe made three documented attempts to schedule visits, none occurred.

---

[2] OCS's custody of Cal and Fiona's parental rights to him are not at issue in this case.

[3] Although the Tribe was involved in this case in an attempt to facilitate visitation, Jared is not an "Indian child" within the meaning of the Indian Child Welfare Act. *See* 25 U.S.C. § 1903(4).

OCS continued to attempt to facilitate visitation. The caseworker testified that she had personally supervised visits at the OCS office in May and September 2022. Fiona showed up 40 minutes late to the second visit, which had been scheduled for one hour.

In September Jared was placed in a pre-adoptive placement with Jared's maternal great-aunt in another state, where he remained throughout the termination trial. The OCS caseworker sought to prepare a referral for video visits with Jared, but it had not been completed by the time of trial in November 2022. Fiona missed a scheduled visit with Cal a week before trial, and the caseworker cancelled another that was scheduled on the first day of trial because the caseworker could not reach either parent to confirm it. To the caseworker's knowledge, however, Fiona was not missing her video visits with her older children.

## B. Termination Proceedings

Fiona did not participate in the termination trial. There were two witnesses: the current caseworker assigned to Fiona's case and the nurse who reported Fiona's substance abuse to OCS after Cal's birth. After trial concluded, the superior court issued a written order terminating Fiona's parental rights.

The court found that Jared was a child in need of aid because of Fiona's substance abuse,[4] and that he would be "at risk" if placed in Fiona's care.[5] The court found by clear and convincing evidence that OCS had made reasonable efforts to reunify Fiona with Jared. Finally, the court found that termination of Fiona's rights was in Jared's best interests.

Fiona now appeals.

---

[4] AS 47.10.011(10) provides that a court may find a child to be in need of aid if the parent's "ability to parent has been substantially impaired by the addictive or habitual use of an intoxicant," resulting in a substantial risk of harm to the child.

[5] *See id.*

## III. STANDARD OF REVIEW

"[W]hether OCS has made reasonable reunification efforts is a mixed question of law and fact."[6] We review mixed questions of law and fact and factual questions under the clearly erroneous standard, while we review legal questions using our independent judgment.[7] Whether the trial court's factual findings satisfy the requirements of the child in need of aid statutes is a question of law that we review de novo.[8]

## IV. DISCUSSION

Before the superior court may terminate parental rights it must find, by clear and convincing evidence, that OCS made reasonable efforts to reunify the family.[9] Reasonable efforts must be "timely" and "designed to prevent out-of-home placement of the child or to enable the safe return of the child to the family home."[10] OCS must identify and address "the problem that caused the children to be in need of aid."[11]

---

[6] *Duke S. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 433 P.3d 1127, 1132 (Alaska 2018) (quoting *Sherman B. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 310 P.3d 943, 949 (Alaska 2013)).

[7] *Joy B. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 382 P.3d 1154, 1162 (Alaska 2016).

[8] *See Duke S.*, 433 P.3d at 1132 (quoting *Sherman B.*, 310 P.3d at 949).

[9] *See* AS 47.10.088 (requiring court to also find that child is in need of aid under AS 47.10.011, that parent has not remedied conduct or conditions that place child at "substantial risk of harm" or that returning child to parent would place child at "substantial risk of physical or mental injury," and that termination is in child's best interest).

[10] AS 47.10.086(a).

[11] *Barbara P. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 234 P.3d 1245, 1262 (Alaska 2010).

Making "reasonable efforts" also requires OCS to "provide reasonable visitation between the child and the child's parents."[12]

OCS's efforts must be "reasonable in light of the surrounding circumstances."[13] Relevant circumstances can include "the parent's substance abuse history, willingness to participate in treatment, the history of services provided by OCS, and the parent's level of cooperation."[14] In reviewing whether OCS made reasonable efforts, we "consider[] the state's reunification efforts in their entirety."[15] We have explained that "OCS's duty to 'offer reunification services is fulfilled by setting out the types of services that a parent should avail himself or herself of in a manner that allows

---

**12**    AS 47.10.080(p).

**13**    *Barbara P.*, 234 P.3d at 1262.

**14**    *Sylvia L. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 343 P.3d 425, 432 (Alaska 2015); *see also Annette H. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 450 P.3d 259, 268 (Alaska 2019) ("OCS's obligation does not extend to forcing an uncooperative or unwilling parent to engage in services, including mental health treatment.") (internal citations omitted). *But cf. Bill S. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 436 P.3d 976, 983 (Alaska 2019) ("[T]he parents' lack of effort does not excuse OCS's failure to make and demonstrate its efforts.").

**15**    *Barbara P.*, 234 P.3d at 1262; *see also Justin D. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, No. S-18335, 2023 WL 3220447, at *11 (Alaska May 3, 2023) (explaining that reasonable efforts are evaluated "in light of all surrounding circumstances").

the parent to utilize the services.' "[16] We have repeatedly held that "OCS's efforts must be 'reasonable but need not be perfect.' "[17]

In challenging the court's finding that OCS made reasonable efforts toward reunification, Fiona argues that (1) OCS provided no evidence of reunification efforts before February 2022; (2) OCS's efforts after February 2022 were "insufficient"; and (3) OCS failed to provide her with reasonable visitation.

## A. The Superior Court's Factual Findings Support The Conclusion That OCS Made Reasonable Efforts.

Fiona attempts to divide OCS's efforts into two distinct time periods: efforts before February 2022 and later efforts. But "the test of whether the state made reasonable efforts to reunify [a parent] and [her] children is not limited to [a] particular segment of time. Instead, we examine whether the state's reunification efforts, when looked at in their entirety, satisfy the requirements of AS 47.10.086(a)."[18] We accordingly reject Fiona's bifurcated analysis and examine OCS's efforts holistically.

Fiona argues the record lacks clear and convincing evidence that OCS made reasonable efforts. But the superior court found facts that support its determination that OCS's efforts were reasonable, and we "will not reweigh evidence

---

[16] *Annette H.*, 450 P.3d at 268 (quoting *Emma D. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 322 P.3d 842, 851 (Alaska 2014)); *see also Sherman B. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 290 P.3d 421, 432 (Alaska 2012) (explaining that OCS "has some discretion both in determining what efforts to pursue and when to pursue them").

[17] *Annette H.*, 450 P.3d at 267-68 (quoting *Violet C. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 436 P.3d 1032, 1038 (Alaska 2019)); *see also Jimmy E. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 529 P.3d 504, 522 (Alaska 2023).

[18] *Frank E. v. State, Dep't of Health & Soc. Servs., Div. of Fam. & Youth Servs.*, 77 P.3d 715, 720 (Alaska 2003).

when the record provides clear support for a trial court's ruling."[19]  Because the court's factual findings have a firm basis in the evidence, they are not clearly erroneous.[20]  Based on the court's findings, we agree with its conclusion that OCS's efforts were reasonable.

The court found that OCS "developed [a] case plan[]" in July 2020 and held "regular administrative reviews, team decision-making meetings . . . , and case-planning meetings."  OCS invited Fiona to these meetings.  The court observed that OCS held three case plan evaluations between February 2021 and February 2022; each concluded that Fiona was failing to work on her case plan or otherwise engage with OCS.

The court found OCS made reasonable efforts to address Fiona's substance abuse over the course of Jared's case.  OCS referred Fiona for "substance use testing, assessments, and treatment."  OCS provided referrals for UAs from January 2020 until June 2022.  Fiona tested positive in May 2020 just before entering inpatient treatment.  She then tested negative in November 2020, just after leaving inpatient treatment.  Fiona failed to attend all subsequent tests through June 2022, except for a positive test in July 2021.  The caseworker also encouraged her to engage with a variety of treatment providers.

OCS also provided transportation assistance to help Fiona access treatment services.  OCS repeatedly provided Fiona with bus passes, and the caseworker

---

[19]  *Kylie L. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 407 P.3d 442, 450 (Alaska 2017) (quoting *Emma D. v. State, Dept. of Health & Soc. Servs., Off. of Child.'s Servs.*, 322 P.3d 842, 849 (Alaska 2014)).

[20]  *See Joy B. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 382 P.3d 1154, 1162 (Alaska 2016) (explaining "[f]actual findings are clearly erroneous if review of the entire record leaves us with 'a definite and firm conviction that a mistake has been made.' " (alteration in original) (quoting *Chloe W. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 336 P.3d 1258, 1264 (Alaska 2014))).

testified that OCS could have arranged additional transportation assistance had Fiona ever requested it.

Fiona argues the court erred in finding that she did not engage with OCS. But because the record contains substantial evidence that Fiona's engagement with OCS and the court was intermittent, the court did not clearly err in finding a lack of participation. The caseworker testified that her predecessor "had very limited contact with the parents." She also observed a pattern that Fiona would express a willingness to participate in services, but would then fail to follow through. For example, when Fiona met with the caseworker in February 2022, Fiona said she was "ready for UAs again, and . . . wanted things to get back on track." But Fiona then missed 26 scheduled UAs between February 2022 and June 2022.[21] Fiona only "sporadically appeared for hearings" and was absent from the termination trial. The court ordered service of process by publication in April 2022 after OCS's prior attempts to serve Fiona both personally and by certified mail were unsuccessful.

Drawing on *Mona J. v. State, Department of Health & Social Services, Office of Children's Services*,[22] Fiona argues that OCS was required to work to overcome her noncooperation unless it was clear such efforts would be futile. *Mona J.* was an ICWA case, but both parties seemingly agree with *Mona J.*'s statement that the trial court's determination regarding whether OCS met the applicable efforts standard must be primarily based on the agency's actions.[23] But we have repeatedly stated that

---

[21]     *See Casey K. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 311 P.3d 637, 644 (Alaska 2013) ("These missed UAs counted . . . as failed UAs."); *see also Dustin B. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, No. S-15466, 2014 WL 4952506, at *3 (Alaska Oct. 1, 2014) ("We have stated that missed or incomplete UAs may properly be considered failed.").

[22]     511 P.3d 553 (Alaska 2022).

[23]     *See id.* at 562 (explaining that "the analysis of active efforts under ICWA turns primarily on OCS's actions, not on the parent's response").

a parent's willingness to engage in services is relevant to determining whether OCS's efforts are reasonable.[24]

The court's factual findings support its conclusion that OCS's efforts to involve Fiona in case planning and assist her in addressing her substance abuse issues were reasonable in light of Fiona's intermittent cooperation.

### B.    OCS Provided Reasonable Visitation.

Fiona argues that OCS did not make reasonable efforts to facilitate visitation. Fiona highlights the court's finding that OCS provided no record of any referral for visitation between July 2021 and June 2022. Fiona also points out that the caseworker assigned to her case in February 2022 waited until June to make a referral for visitation.

We are concerned that OCS failed to promote visitation for a substantial period of time during this case. But we are persuaded that OCS's efforts were reasonable when assessed over the life of the case. The superior court made specific findings that OCS generally "made efforts to facilitate family contact" and "significant efforts to ensure [Jared] [wa]s placed with family" with the opportunity for supervised in-person visits. Moreover, visitation is only one part of the reasonable efforts analysis, and must be considered alongside OCS's reasonable efforts to address Fiona's substance abuse problems over the course of more than two years.

---

[24]    *See, e.g.*, *Sylvia L. v. State, Dep't of Health & Soc. Servs, Off. of Child.'s Servs.*, 343 P.3d 425, 432 (Alaska 2015) (noting reunification efforts regarding non-Indian child "need only be reasonable under the circumstances, depending" in part on parent's level of cooperation); *Sherman B. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 310 P.3d 943 (Alaska 2013) ("In evaluating whether OCS has made reasonable efforts, the court should 'look at . . . the parent's level of cooperation with OCS's efforts.' " (quoting *Tara U. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 239 P.3d 701, 705 (Alaska 2010))); *cf. Mona J.*, 551 P.3d at 561 (concluding courts may consider parent's noncooperation in the ICWA active efforts context).

OCS made substantial efforts to facilitate visitation early in the case. OCS created a family contact plan in May 2020, when Jared was placed with his maternal grandmother, that "permitted and encouraged" supervised daily visits anytime between 9 a.m. and 9 p.m. Fiona then entered inpatient treatment. OCS initiated a trial home visit at the treatment facility in August 2020. This placement continued for several months after Fiona completed the treatment program. In November OCS returned Jared to his maternal grandmother, but continued allowing unlimited supervised visits between Jared and both his parents pursuant to the family contact plan. This arrangement continued until July 2021, when OCS ended the placement after Jared's grandmother permitted unsupervised overnight visits and Jared and his siblings tested positive for illicit substances.

Fiona argues that the August 2020 trial home visit should not be considered as part of OCS's reasonable efforts because "the trial court did not actually hear what OCS did to make possible or facilitate the home visit or to ensure its success." She also argues that Jared's subsequent placement with his maternal grandmother allowed OCS to have "a hands off attitude for months at a time."

We disagree with Fiona. OCS's efforts toward reunification include Jared's trial home visit and subsequent placement with his maternal grandmother.[25] OCS placed Jared with Fiona during a trial home visit. Jared's subsequent placement with his grandmother was a statutorily preferred placement, designed to encourage

---

[25] *See Casey K.*, 311 P.3d at 646 (considering an "open and liberal" visitation schedule in reasonable efforts finding); *cf. Keira H. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, No. S-16608, 2017 WL 6395824, at *7 (Alaska Dec. 13, 2017) (explaining that court was permitted to take into account fact that parent withdrew from services during trial home visit).

reunification.[26] The grandmother coordinated visits with both of Jared's parents. The trial home visit and familial placement demonstrate that OCS attempted to provide continuous and unlimited contact between Jared and Fiona until its safety plans were repeatedly breached.

There is no evidence that OCS made efforts to facilitate visitation between July 2021, when OCS removed Jared from his grandmother's home, and June 2022. OCS did create a new family contact plan in July 2021 to allow visitation supervised by OCS, the Tribe, or Jared's maternal aunt.[27] It is not clear whether those visits occurred: The court observed that the caseworker "did not know whether any referral for visitation had been made" between July and the following February. Thus the court assumed OCS did not make any efforts during this time period for the purposes of its reasonable efforts determination. Considering Fiona requested visitation with Jared at the time she met with her caseworker in February 2022, it is troubling that OCS did not make a visitation referral until June.

An important factor in our holding that OCS made reasonable efforts toward visitation is that the gap in OCS's documented efforts to promote visitation largely mirrors the period of time that Fiona was disengaged from treatment, OCS, and the court.

---

[26] *See* AS 47.14.100(e)(3) (ranking preferences for out-of-home placements for children in OCS custody, beginning with "an adult family member"); *Irma E. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 312 P.3d 850, 853 (Alaska 2013) ("Alaska law has long demonstrated a preference that children who are in OCS's custody be placed with family members.").

[27] The contact plans allowed Fiona supervised in-person visits with Jared once a week for up to 1.5 hours and phone calls three times per week. OCS allowed these visits to be supervised by Jared's maternal aunt in Anchorage, who was Jared's placement provider at that time.

The court's factual findings that Fiona was disengaged are supported by the record. The court found that the caseworker had "struggled to maintain contact with [Fiona], despite her efforts to do so" because Fiona "failed to follow through" with scheduled services, family contacts, and UAs. The court also found that Fiona did not engage in court proceedings. The court noted that it had ordered service of process via publication in April 2022 after OCS's unsuccessful attempts at personal service.[28] The court found that Fiona had only "sporadically appeared for hearings in the ensuing months." The court concluded that, "[c]onsidering the totality of efforts made by [OCS] over the course of this case, and [Fiona's] intermittent engagement, OCS's efforts were reasonable."

Furthermore, the record shows that, after attending a hearing in November 2021, Fiona was absent from court hearings until July 2022. At the time of the termination hearing in January 2022, OCS had been unable to serve the petition by mail. The caseworker testified that during this time period Fiona fell out of contact "for several months."

Gaps in visitation do not preclude a finding that OCS made reasonable reunification efforts. We have previously held that OCS made reasonable efforts even though a parent had months-long periods without visitation, provided that OCS's efforts

---

[28] OCS first raised the service of process issue at a hearing in January 2022, after service by certified mail was returned. At a subsequent hearing in March OCS informed the court that "both judicial services and mail service have failed." Fiona's attorney took no position on OCS's motion for service by publication.

as a whole were reasonable.[29]  But we have also held that OCS's efforts were not reasonable in cases with similar breaks.[30]

Here, there is clear and convincing evidence OCS provided adequate opportunity for visitation.  From June 2020 to July 2021 OCS provided Fiona with what was essentially unlimited visitation that ended only because Fiona and her mother failed to comply with OCS's safety plans.  OCS's later shortcomings coincided with the period of Fiona's documented nonparticipation and unavailability, which ultimately compelled the trial court to serve the termination petition by publication.  Considering OCS's efforts in their entirety, the trajectory of Fiona's participation, and Jared's best interests,[31] we hold that the superior court did not err in finding that OCS's efforts to provide visitation contributed to the reasonableness of its efforts overall.

## V.   CONCLUSION

We AFFIRM the superior court's order terminating Fiona's parental rights.

---

[29]     *See Barbara P. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 234 P.3d 1245, 1262-63 (Alaska 2010) (finding OCS made reasonable reunification efforts despite failure to provide one parent with visitation while he was incarcerated in part because OCS made "substantial efforts" to help parent address problems that led to removal of his children); *Chloe T. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, No. S-16927, 2019 WL 324928, at *3 (Alaska Jan. 23, 2019) (considering fact that parent "had consistent in-person visitation with [the child] for the first seven months of OCS custody" in concluding that OCS made reasonable efforts to reunify family).

[30]     *Kylie L. v. State, Dep't of Health & Soc. Servs. Off. of Child.'s Servs.*, 407 P.3d 442, 450 (Alaska 2017).

[31]     *Joy B. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 382 P.3d 1154, 1165 (Alaska 2016) ("[E]ven in th[e] reasonable efforts inquiry, AS 47.10.086(f) provides that the 'primary consideration' is still the child's best interests.").